Opinion Issued October 15, 2009












In The

 Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00426-CR

 01-08-00427-CR

 01-08-00428-CR

____________


MICHAEL LEE TREVINO, APPELLANT


v.


THE STATE OF TEXAS, APPELLEE


 



On Appeal from the 268th District Court 

Fort Bend County, Texas

Trial Court Cause Nos. 47814; 47815; 46234








MEMORANDUM OPINION

 Appellant, Michael Lee Trevino, appeals a judgment that convicts him for the
aggravated robbery of Maria Muskrella in appellate cause number 01-08-00426-CR,
which is trial court cause number 47814; a judgment that convicts him for the
aggravated robbery of William Ransdell (hereinafter "Bill") in appellate cause
number 01-08-00427-CR, which is trial court cause number 47815; and a judgment
that convicts him for the aggravated robbery of Michael Muskrella, Jr. (hereinafter
"Michael Anthony") in appellate cause number 01-08-00428-CR, which is trial court
cause number 46234. See Tex. Penal Code Ann. § 29.03 (Vernon 2003). Appellant
pleaded not guilty to each offense before a single jury. The jury found him guilty of
each offense and determined his sentence at 18 years in prison for each of the cases. 
The trial court ordered the sentences to run concurrently. In four issues that pertain
to each of the three appeals, appellant contends the evidence is legally and factually
insufficient to support his convictions; the trial court erred by including an instruction
on the law of parties in the jury charges; and the trial court erred by admitting
extraneous offense evidence. We conclude the evidence is legally and factually
sufficient to support appellant's convictions; the trial court properly instructed the
jury on the law of parties; and the trial court did not err by admitting the extraneous
evidence. We, therefore, affirm.

Background

 On February 2, 2007, Michael Muskrella, Sr. (hereinafter "Michael Thomas")
and his family, including his wife Maria, his son Michael Anthony, and his daughter
Patricia Muskrella, ate dinner with Bill and Patty Ransdell at Los Flores restaurant
in Fulshear, Fort Bend County, Texas. After dinner, the Muskrellas and Ransdells
left the restaurant at around nine in the evening. While walking back to the Ransdell
home, a group of men approached the Muskrellas and Ransdells. All the assailants
except one wore either a black or red bandana on his face and several wore black or
red hoodies. Michael Anthony saw that two of the men had guns. 

 The men ordered the Muskrellas and Ransdells to get down on the ground and
asked if they wanted to die. Complying with the order to get on the ground, Michael
Anthony assumed a prostrate position, directly facing the shoes worn by an assailant. 
Michael Anthony described the shoes as "unmistakable" because they were "bright
shiny red smooth high-top shoes." After Michael Anthony took his wallet out of his
pocket, an assailant proceeded to go through Michael Anthony's pockets and
belongings. 

 The assailants worked together in taking property from the complainants. One
assailant took Maria's purse. An assailant held what Bill perceived as a gun towards
Bill's face and said, "Give me your money. Do you want to die?" That person kicked
Bill to the ground. Another assailant put his knee on Bill's back, and then pulled
Bill's wallet and checkbook out of his back pocket. The assailants then told Bill to
get up and run, but when he did, the assailants kicked him in his kidney region,
causing him to fall back to the ground. One of the assailants put an automatic pistol
to Michael Thomas's head. Michael Thomas pushed the gun away from his temple.
One of the assailants told Patricia to give him her purse. As the assailant lifted the
purse from her arm, he touched her arm. Michael Anthony, Maria, and Bill each
stated that they feared the assailants would kill all the Muskrellas and Ransdells. Deputies Delgado and Gammon of the Fort Bend County Sheriff's Office 
received a dispatch to assist in the investigation of an aggravated robbery. Upon
arriving at the scene, Deputies Delgado and Gammon learned the details of what
happened to the Muskrellas and Ransdells, and left the scene to check out the
surrounding area. Approximately one block from the scene of the robbery, Deputies
Delgado and Gammon came across Brandon Thomas and appellant, who was wearing
bright red shoes that matched the description of the shoes described by Michael
Anthony. Appellant and Thomas said they were on the way to a convenience store
located next to the Los Flores restaurant. 

 When Deputy Delgado asked appellant and Thomas how they were going to
pay for their purchases, appellant responded that he had money in his pocket and
allowed Deputy Gammon to retrieve the money. Thomas also responded that he had
money in his pocket and allowed Deputy Delgado to retrieve it from his pocket. The
money retrieved from the pockets of appellant and Thomas matched the amount of
money the Muskrellas and the Ransdells stated had been taken from them by the
assailants. The denominations of the money, including a $2 dollar bill, also matched. 
Scent swabs later demonstrated that the money in appellant's and Thomas' possession
had been in the Muskrellas' and Ransdells' possession. 

 At trial, the three complainants listed in the indictment, Maria, Bill, and
Michael Anthony each testified. Although not listed as complainants, Michael
Thomas, Patricia, and Patty also testified. Appellant objected to this testimony. In
response to appellant's objection, the State asserted the testimony of Michael
Thomas, Patricia, and Patty was necessary in its case-in-chief to prove the identity of
appellant and to prove that appellant exhibited a gun during the commission of the
robberies. Overruling appellant's objection, the trial court instructed the State to
"focus on the questions only on those matters that are in contention, identity and
whether there was a gun present and not only what -- any crime committed against
those particular individuals personally." 

 The Court's charge to the jury during the guilt-innocence phase of trial
included instructions on the law of parties, so that the jury could convict appellant for
his conduct alone or for acting as a party to the offense. The Court's instruction to
the jury on the law of parties stated:

 All persons are parties to an offense who are guilty of acting together in
the commission of the offense. A person is criminally responsible as a
party to an offense if the offense is committed by his own conduct, by
the conduct of another for which is criminally responsible, or both. A
person is criminally responsible for an offense committed by the conduct
of another if acting with intent to promote or assist the commission of
the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Mere presence alone will not
constitute one as being a party to an offense. 

 

During the charge conference, appellant's counsel objected to the inclusion of the
instruction on the law of parties in the charge, stating:

 There [was] no evidence that [appellant] acted with the intent to promote
or assist in the commission of the offense. He did nothing to solicit,
encourage, direct, aid or attempt to aid anyone in the commission of this
offense. . . [appellant] should be tried on his indictments alone, for his
acts and not the acts of Mr. Thomas.


The court overruled this objection.Sufficiency of the Evidence

 In his first two issues, appellant contends the evidence is legally and factually
insufficient to prove that appellant is guilty of the offenses of aggravated robbery. 
Specifically, appellant contends the evidence is insufficient to show (1) appellant was
a party to the offenses of aggravated robbery and (2) appellant or one of his co-actors
exhibited a gun during the course of taking property from the complainants. A. The Law of Parties

 A person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally
responsible, or by both. Tex. Penal Code Ann. § 7.01(a) (Vernon 2003). A person
is criminally responsible for the conduct of another if he acts with intent to promote
or assist the commission of the offense and he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. Id. at § 7.02(a)(2). When a
party is not the primary actor, the State must prove conduct constituting an offense
plus an act by the defendant done with the intent to promote or assist such conduct. 
Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985); Miller v. State, 83 S.W.3d
308, 313 (Tex. App.--Austin 2002, pet. ref'd). Evidence is sufficient to sustain a
conviction under the law of parties if it shows the defendant was physically present
at the commission of the offense and encouraged the commission of the offense either
by words or by other agreement. Tarpley v. State, 565 S.W.2d 525, 529 (Tex. Crim.
App. 1978); Miller, 83 S.W.3d at 313-14. 

 "Since an agreement between parties to act together in common design can
seldom be proven by words, the State often must rely on the actions of the parties,
shown by direct or circumstantial evidence, to establish an understanding or a
common design to commit the offense." Miller, 83 S.W.3d at 314. The agreement,
if any, must be made before or contemporaneous with the criminal event, but in
determining whether one has participated in an offense, the court may examine the
events occurring before, during and after the commission of the offense. Beier, 687
S.W.2d at 3-4; Miller, 83 S.W.3d at 314. Circumstantial evidence may suffice to
show that one is a party to an offense. Wygal v. State, 555 S.W.2d 465, 469 (Tex.
Crim. App. 1977); Miller, 83 S.W.3d at 314. 

 While mere presence at the scene is not enough to sustain a conviction, that
fact may be considered in determining whether an appellant was a party to the
offense. Valdez v. State, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979) (op. on reh'g);
Miller, 83 S.W.3d at 314. If the evidence, however, shows the mere presence of an
accused at the scene of an offense, without more, then it is insufficient to sustain a
conviction as a party to the offense. Valdez, 623 S.W.2d at 321; Scott v. State, 946
S.W.2d 166, 168 (Tex. App.--Austin 1997, pet. ref'd). B. The Elements of Aggravated Robbery

 Appellant challenges the sufficiency of the evidence to sustain each of the
convictions for aggravated robbery. A person commits aggravated robbery when he
commits robbery and he causes serious bodily injury to another, or uses or exhibits
a deadly weapon. See Tex. Penal Code Ann. § 29.03. A firearm is considered a
deadly weapon. See id.§ 1.07(a)(17)(A) (Vernon Supp. 2008).

 C. Legal Sufficiency Standard of Review

 In his first issue in each of the appeals, appellant contends the evidence is not 
legally sufficient to sustain his convictions. In a legal sufficiency review, we
consider the entire trial record to determine whether, viewing the evidence in the light
most favorable to the verdict, a rational jury could have found the accused guilty of
all essential elements of the offense beyond a reasonable doubt. See King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000); Hoang v. State, 263 S.W.3d 18, 22
(Tex.App.--Houston [1st Dist.] 2006, pet. ref'd). In conducting our review of the
legal sufficiency of the evidence, we do not reevaluate the weight and credibility of
the evidence, but ensure only that the jury reached a rational decision. See Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993). "Circumstantial evidence is as
probative as direct evidence in establishing the guilt of an actor, and circumstantial
evidence alone can be sufficient to establish guilt." Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007). "On appeal, the same standard of review is used for both
circumstantial and direct evidence cases." Id.

 D. Factual Sufficiency Standard of Review

 In his second issue in each of the appeals, appellant contends the evidence is
factually insufficient to sustain each of the convictions for aggravated robbery. When
conducting a factual-sufficiency review, we view all of the evidence in a neutral light. 
Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005); Hoang, 263
S.W.3d at 23. We will set aside the verdict only if (1) the evidence is so weak that
the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great
weight and preponderance of the evidence. Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). 
Under the first prong of Johnson, we cannot conclude that a conviction is "clearly
wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted,
we would have voted to acquit had we been on the jury. Watson, 204 S.W.3d at 417. 
Under the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury's resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also discuss
the evidence that, according to the appellant, most undermines the jury's verdict. See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 

 Appellate courts should afford almost complete deference to a jury's decision 
when that decision is based upon an evaluation of credibility. See Lancon v. State, 
253 S.W.3d 699, 705 (Tex. Crim. App. 2008). The jury is in the best position to
judge the credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court that relies on the cold record. Id. The jury may choose
to believe some testimony and disbelieve other testimony. Id. at 707.

 E. The Evidence

 1. Michael Anthony

 Michael Anthony testified that the group of assailants were African-American
or Hispanic males. Two assailants threatened to kill Michael Anthony and ordered
him to get on the ground. Once Michael Anthony lay prostrate on the ground, he
noticed that one assailant had on bright red shiny high-top shoes. 

 Prior to the robbery, Michael Anthony had been paid his salary in cash by his
father. Out of that salary money, he had ten $100 bills in his wallet, along with
identification and credit cards. All of this money was taken by an assailant. All the
assailants he saw wore dark colored baggy clothing and big jackets. Michael
Anthony could not positively say that appellant, as he appeared in the courtroom, was
one of the robbers because the faces of the robbers he saw were covered with hoods
and bandanas.

 2. Maria

 Maria testified that the group of assailants were Hispanic males. One assailant
held what she believed was a gun to the side of her head. Although the other
complainants testified that all the assailants were wearing hoodies or bandanas to
conceal their faces, she was sure that this assailant did not. She saw his entire face
and throughout the robbery she only looked at this one assailant because she was
afraid of being shot. She stated this assailant had dark, beady, serious looking eyes
and a round face. He had short hair that was slightly wavy and had a flat nose. She
testified that appellant, as he appeared in the courtroom, resembled the assailant that
held the gun to her face. The money in the purse taken from her had slightly under
$200. The denominations of the money consisted of a $100 dollar bill, a $50 dollar
bill, some $20 dollar bills, and a $10 dollar bill. Maria explained that she gave up the
purse because she thought "they were going to spray us [with bullets]."

 3. Bill

 Bill testified that the group of assailants were either African-American or
Hispanic, and they had dark skin. Of the two assailants that approached Bill, one had
on a black bandana, and the other had on a red bandana. Bill was certain they were
also wearing hoodies. The money taken from him consisted of six $100 dollar bills,
smaller bills, and a $2 dollar bill that he kept as a lucky token because it was unique.

 4. Michael Thomas

 Michael Thomas' testimony was limited by the court to the identification of the
gun. Michael Thomas testified that he "touched the gun" and "moved it away from
[his] temple." Michael Thomas identified the gun as an "automatic pistol" based
upon the appearance of the weapon and how it felt when he touched it. 

 5. Patty

 Patty testified that the assailants that attacked her wore dark red hoodies and
dark red jackets. Patty also testified about the firearm she saw. She stated she saw
the firearm pointed at "[t]he temple of [Michael Thomas's] head." She specifically
noted that the gun was "small, square . . . [and] pointed at Michael [Thomas]'s
temple." 

 6. Patricia

 Patricia testified that the assailant who approached her was likely Hispanic and
had on a dark colored bandana. Because it was dusk, she could not tell the exact
color of the bandana.

 7. Deputy Delgado 

 Deputy Delgado testified that she found appellant and Thomas about an hour
after the robbery and about one block from the scene of the robbery. Delgado
personally searched Thomas but did not search appellant. Thomas, had over $1,400
dollars on him. Out of that amount, Thomas had 14 $100 dollar bills, two $20 dollar
bills, two $5 dollar bills, and a $2 dollar bill.


 8. Deputy Larry Gammon

 Deputy Gammon testified he personally searched appellant. When Deputy
Gammon found appellant, he was wearing a red shirt, dark colored shorts, and red
high top tennis shoes. He testified that Thomas was wearing a white long sleeve
shirt, black pants, and black tennis shoes. Deputy Gammon believed the dark
clothing appellant and Thomas were wearing closely matched the description of the
clothes worn by the assailants. Appellant had a wallet, but the money he carried was
not in his wallet but in his front pocket. The amount of that money was $190 dollars. 
Out of that $190, there was one $50 dollar bill, four $20 dollar bills, four $10 dollar
bills, and several smaller bills. Appellant also had a red bandana in his pocket.

 9. Detective Brian Wall

 Hours after the Muskrella and Ransdell robbery, Detective Brian Wall was able
to locate a suspicious vehicle less than ten blocks from the scene of that robbery.
Detective Wall began searching for a vehicle when he was notified that a white
Impala had been used in another robbery reported the same night and in the same
general area as the Muskrella and Ransdell robbery. Detective Wall found a white
Impala that matched the description. The Impala belonged to Erica Lewis, the
girlfriend of Brandon Thomas, who was the man with appellant shortly after the
Muskrella and Ransdell robbery. Detective Wall gained permission to search the
Impala, and found a dew rag on the front seat. Large dark red hoodie jackets and
wallets were found inside the car's cabin. Based upon the identification cards found
in the wallets, Detective Wall discovered the wallets belonged to Bill and Michael
Anthony.

 F. Sufficiency of the Evidence Analysis

 Appellant makes the same arguments concerning his challenge to legal and
factual sufficiency of the evidence. Appellant challenges the evidence identifying
him as one of the assailants. Appellant points to Maria's testimony on cross-examination that she could not "say one hundred percent for sure" that appellant was
one of the men that approached the Muskrellas and the Ransdells and demanded
money. Appellant points to similar testimony by Bill and Michael Anthony because
neither man could say that appellant was one of the men that approached the
Muskrellas and the Ransdells. Further, appellant points to Michael Anthony's
testimony that the red shoe appellant wore when he was apprehended was not the
same red shoe the assailant wore when Michael Anthony was robbed. 

 The evidence shows that all the assailants were either Hispanic or African-American males and that most, if not all, the assailants wore either red or black
bandanas and wore hoodie-type jackets. When the deputies stopped appellant a block
from the scene of the incident with the Muskrellas and Randells within one hour of
the incident, he was wearing clothing that matched the description of the clothing
worn by the assailants. He also had a red bandana in his pocket. One complainant,
Maria, believed appellant closely resembled the assailant that held a gun to her head. 
Furthermore, when appellant was apprehended, the $1400 in possession of appellant
and his companion, Thomas, closely matched both the amount and the denomination
of the money stolen from the Muskrellas and Ransdells; one of the matching
denominations was a $2 dollar bill, an uncommon denomination. Shortly after the
robbery, the wallets of Bill and Michael Anthony were also later found in a car
parked within 10 blocks of the robbery. The car was owned by Thomas' girlfriend. 

 Appellant also challenges the evidence that the assailants used a firearm. 
Appellant points to Maria's testimony at trial that she was sure a gun was held to her
head, but she never actually saw a gun. Appellant points to Bill's testimony at trial
that he assumed the man that approached him was holding a gun in his pocket, but he
never actually saw a gun. Other evidence in the record, however, established that a
firearm was used. Patty testified that she was sure she saw a gun pointed at "[t]he
temple of [Michael Thomas's] head" and that she was sure it was a gun. She
specifically noted that the gun was "small, square . . . [and] pointed at Michael
[Thomas]'s temple." Michael Thomas testified that he "touched the gun" and "moved
it away from [his] temple." 

 Viewing the evidence in a light most favorable to the verdict, we conclude the
jury could have reasonably found that appellant was physically present at the
commission of the aggravated robbery of Maria, Bill, and Michael Anthony, acted
with the intent to promote or assist the aggravated robberies, and encouraged and
aided the commission of the aggravated robbery by participating with the group of
assailants who worked in combination to commit aggravated robberies. See Tex.
Penal Code Ann. § 29.03; Tarpley, 565 S.W.2d at 529; Miller, 83 S.W.3d at
313-14. We hold the evidence is legally sufficient to sustain the convictions for
aggravated robbery. We overrule appellant's first issue for each of the three appeals.

 We conclude that, viewed in a neutral light, the evidence tending to prove that
appellant is guilty of the aggravated robberies of Maria, Bill, and Michael Anthony,
is not so weak as to render the jury's verdict clearly wrong or manifestly unjust. See
Johnson, 23 S.W.3d at 11. We also conclude that, viewed in a neutral light, the
verdict is not against the great weight and preponderance of the evidence that
appellant committed aggravated robberies of Maria, Bill, and Michael Anthony. See
id. We hold the evidence is factually sufficient to sustain the convictions for
aggravated robbery. We overrule appellant's second issue for each of the three
appeals.


Admission of Extraneous Evidence

 In his fourth issue, appellant contends the trial court erred by admitting
extraneous evidence. Appellant contends the trial court erred by admitting the
testimony of Michael Thomas, Patricia, and Patty over his objections under Texas
Rules of Evidence 403 and 404(b). See Tex. R. Evid. 403 (Vernon 2003) ("Although
relevant, evidence may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, or needless presentation of cumulative evidence.");
Tex. R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to
prove the character of a person in order to show action in conformity therewith. It
may, however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident . . . .") 

 A. Standard of Review

 We review a trial court's admission of extraneous offense evidence for an
abuse of discretion. Rankin v. State, 974 S.W.2d 707, 718 (Tex. Crim. App. 1996)
(op. on reh'g); Wolfberg v. State, 73 S.W.3d 441, 443 (Tex. App.--Houston [1st
Dist.] 2002, pet. ref'd). A trial court does not abuse its discretion as long as its
decision to admit evidence is within the "zone of reasonable disagreement." 
Montgomery v. State, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991) (op. on
reh'g). Further, a trial court's decision regarding admissibility of evidence will be
sustained if correct on any theory of law applicable to the case, even when the court's
underlying reason for the decision is wrong. Romero v. State, 800 S.W.2d 539,
543-44 (Tex. Crim. App. 1990) (citing Spann v. State, 448 S.W.2d 128 (Tex. Crim.
App. 1969)).

 B. Rule 404(b)

 Rule 404(b) states that evidence of extraneous offenses is not admissible at the
guilt-innocence phase of a trial to prove that a defendant committed the charged
offense in conformity with a bad character. Tex. R. Evid. 404(b); Nobles v. State,
843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Extraneous offense evidence may be
admissible, however, when it has relevance beyond character-conformity, for
example, to show proof of motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident. Prible v. State, 175 S.W.3d 724, 731
(Tex. Crim. App. 2005).

 Furthermore, extraneous offense evidence may be admissible as same-transaction contextual evidence, where "several crimes are intermixed, or blended
with another, or connected so that they form an indivisible criminal transaction." 
Prible, 175 S.W.3d at 731-32 (citing Rogers v. State, 853 S.W.2d 29, 33 (Tex. Crim.
App. 1993)). "The jury is entitled to know all relevant surrounding facts and
circumstances of the charged offense; an offense is not tried in a vacuum." Id. at 733
(citing Moreno v. State, 853 S.W.2d 29, 33 (Tex. Crim. App. 1986)). To be
admissible under Rule 404(b), same transaction contextual evidence must be
necessary to the jury's understanding of the offense. See Wyatt v. State, 23 S.W.3d
18, 25 (Tex. Crim. App. 2000). Such necessity can exist because (1) several offenses
are so intermixed or connected as to form a single, indivisible criminal transaction,
such that in narrating the one, it is impracticable to avoid describing the other; or (2) 
the same transaction contextual evidence is admissible "not for the purpose of
showing character conformity, but to illuminate the nature of the crime alleged." 
Comacho v. State, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

 Appellant and his co-actors effectuated the aggravated robbery of the Ransdells
and Muskrellas within the same, concurrent, series of events. While the present cases
before us concern the aggravated robberies of Michael Anthony, Maria, and Bill,
these offenses occurred in a single indivisible criminal transaction, and in the
presence of Michael Thomas, Patricia, and Patty. See Prible, 175 S.W.3d at 731-32. 
The testimony of Michael Thomas, Patricia, and Patty was not cumulative, but rather
it was needed to develop the full story regarding the offenses. Each witness had
something unique to offer. 

 At trial, the defense brought into issue whether appellant and his companions
actually used a gun. The complainants, Michael Anthony, Maria, and Bill, testified
that they thought a gun was used, but were not able to fully testify that they saw the
actual gun. Patty and Michael Thomas, on the other hand, could provide that
testimony. Patty testified that she was sure she saw a gun pointed at "[t]he temple of
[Michael Thomas's] head." She specifically noted that the gun was "small, square,
dark . . . [and] pointed at Michael [Thomas]'s temple." Michael Thomas provided
even more specific testimony about the gun. He stated that he "touched the gun" and
"moved it away from [his] temple." After noting his extensive experience with
firearms, he testified that he believed it was an "automatic weapon" and likely a
"Glock."

 At trial, appellant also brought identity into issue. Patty and Patricia were able
to specifically testify about appellant's identity. Patty testified that appellant and his
companions were wearing "red hoodies and bandanas." Patty's ability to testify that
the clothing was red was important because the robbery occurred at or after dusk and
as a result there was poor lighting. The poor lighting made it difficult for most of the
complainants to specify the exact color of the "dark colored" clothing. Patty was able
to provide that testimony by testifying that the color of the clothing was red. Patty's
identification of the assailants' clothing and the red bandana was important to the
State's case-in-chief because it clarified the testimony regarding the assailants'
clothing, and because a red bandana was one of the items in appellant's possession
at the time of the arrest. 

 The testimony of Michael Thomas, Patricia, and Patty was needed to address
issues raised at trial by appellant and was limited to providing same transaction
contextual evidence necessary to the jury's understanding of the offense. See Wyatt,
23 S.W.3d at 25. The trial court did not abuse its discretion under Rule 404(b) by
allowing the State to introduce testimony of appellant's participation in the
aggravated robbery and the presence of a weapon during the commission of the crime. 
Id.

 C. Rule 403

 Evidence may be excluded under rule 403 if the probative value of the evidence
is substantially outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403;
Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003) (citing Montgomery,
810 S.W.2d at 387). An appellant's trial objection must comport with his objection
on appeal, or error is waived. Tex. R. App. P. 33.1(a)(1)(A); Martinez v. State, 98
S.W.3d 189, 193 (Tex. Crim. App. 2003). At trial, appellant objected to the
testimony of Michael Thomas, Patricia, and Patty only on the grounds that such
testimony would violate rule 404(b); here, he contends that the court erred because
the testimony was more prejudicial than probative and therefore violated rule 403. 
Because the ground in appellant's trial motion does not comport with his assertions
on appeal, any error is waived. We overrule the fourth issue in each of the three
appeals.

Jury Instruction on Law of Parties

 In his third issue, appellant contends the trial court erred by including a jury
instruction on the law of parties. Appellant does not challenge the phrasing of the
instruction, only its inclusion. Having found the evidence legally sufficient to show
appellant acted as a party in the aggravated robberies of Michael Anthony, Maria, and
Bill, we conclude the trial court properly included a jury instruction on the law of
parties. See, e.g., Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001) (jury
instruction can be given if "anything more than a scintilla of evidence" relating to
issue is present). We overrule appellant's third issue for each of the three appeals.

Conclusion

 We affirm the judgment of the trial court.


 


 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).