**Reversed and Judgment of Acquittal Rendered and Majority and Dissenting Opinions filed September 29, 2011.**



In The

# Fourteenth Court of Appeals

### NO. 14-10-00461-CR

### JIMMIE GROSS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1085393**

## DISSENTING OPINION

Corkney Lee is dead because of a pair hotheads with a gun. Appellant and his cohort acted together from start to finish. Together, they got into a truck where a shotgun and ammunition lay within easy reach. Together, the twosome traveled the roadway, spewing heated words at the occupants of another vehicle until the ugly exchange escalated to a showdown. Together, the impetuous pair, gun in tow, went to face their roadway nemesis in a nearby parking lot, where the pull of a trigger would forever silence him. And, together, the cohorts sped away from the scene and fled to a relative's

house, where one took the gun and the other the truck, and both worked to conceal the terrible deed.

Together, the twosome transformed a random roadway encounter into to a deadly confrontation. Appellant was the driver, not the shooter, but under Texas law the jury found him guilty just the same because he acted with the intent to promote or assist the shooter in the commission of the murder by soliciting, encouraging, directing, aiding, or attempting to aid him in the commission of that offense. The twelve jurors who evaluated the evidence were convinced of appellant's guilt beyond a reasonable doubt. But, today the majority finds the evidence insufficient to support the murder conviction and renders a judgment of acquittal.

How could the majority look at the same evidence and come to such a different conclusion? The explanation is simple: the jury evaluated all permissible proof—evidence and reasonable inferences from the evidence—but the majority focuses only on isolated pieces of evidence without considering the context or the full picture. In the process, the majority insists on higher proof than the law demands. Ultimately, the majority concludes, "There is no evidence—direct or circumstantial—of [the shooter] and appellant's 'acting together' pre-murder."[1] An evaluation of all the proof under applicable law leads to the opposite conclusion. The evidence is sufficient to support the conviction under the law of the parties.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was traveling home from a night club with his brother-in-law of eight years, John Jones, who was his frequent companion. According to evidence at trial,[2] they were in a white Dodge Ram truck with appellant at the wheel and Jones in the passenger

---

[1] *See ante* at p. 10.

[2] Jones was convicted of Lee's murder. Jones also was convicted of murder of another person completely unrelated to the charged offense. Appellant testified at both of Jones's trials. Appellant's testimony at Jones's trials was read into evidence at trial in the case under review.

seat. Appellant kept a shotgun behind the headrests of the backseat of the truck with ammunition nearby.

While appellant and Jones were stopped at a traffic signal, the complainant Corkney Lee pulled his vehicle up beside them. The drivers began to engage in heated talk. The encounter soon escalated to the point that both drivers pulled into the parking lot of a nearby service station and convenience store. The stage was set for a face-off. Appellant exited his truck, leaving Jones with the shotgun. Lee also exited his vehicle. Appellant and Lee continued the escalating verbal exchange. Appellant claimed to have been two to three steps away from the Lee's vehicle—close enough to touch it. For about a minute, appellant stood face to face with Lee, exchanging heated words. Then a shotgun blast rang out.

Appellant claimed that before the shooting, he saw Lee turn to run away and then turned to see Jones aiming the shotgun in Lee's direction. Appellant testified that he did not see Jones fire the weapon but that he heard the sound of the shotgun blast. Appellant claimed to have said, "No, no," and turned to run to his truck. Even though appellant was standing right there and even though Lee suffered multiple wounds from the blast, appellant claimed he did not know that anyone had been hit.

After the shooting, appellant and Jones immediately fled the scene in the truck, with appellant at the wheel and Jones in the passenger seat. Appellant drove Jones to a relative's home. Jones got out of the truck and took the shotgun with him.

Five minutes later, appellant returned to the scene of the shooting. He claimed that was when he learned that Lee had been shot and killed. Eight to nine law enforcement vehicles had arrived and one officer on the scene described seeing the dead body of 26-year-old Lee laying in the open doorway of the convenience store. Another officer testified that by the time he arrived, a large crowd had gathered at the scene. This officer interviewed several witnesses as part of the investigation. Appellant, watching from afar, left the scene without speaking with any of the law enforcement officers.

The autopsy report reflects that Lee sustained multiple shotgun pellet wounds primarily in his back with a few on the back of his head and on one of his arms. Post-mortem x-rays of Lee's head revealed six shotgun pellets in the scalp tissue. The bulk of the shotgun blast entered Lee's back; wounds are spread over an eleven-inch zone. The medical examiner determined that the cause of Lee's death was the multiple wounds to the back.

Investigating officers testified that they identified appellant as a suspect following a tip. According to the investigators, when appellant was questioned by authorities, he repeatedly denied any involvement in the offense. Ultimately, appellant was charged with Lee's murder and the case proceeded to trial.

The trial court included instructions in the jury charge indicating that appellant could be convicted as a party to the charged offense. The jury found appellant guilty as charged. The trial court ordered a pre-sentence investigation report and recessed the case. Following a punishment hearing, the trial court sentenced appellant to ten years' confinement.

### SUFFICIENCY OF THE EVIDENCE

In appellant's first issue, he asserts the evidence is legally and factually insufficient to support his conviction under the law of parties.

In evaluating a party's challenge to the sufficiency of the evidence, this court must view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of

fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A majority of the judges of the Texas Court of Criminal Appeals has determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); 323 S.W.3d 893, 912–14 (Cochran, J., concurring.) (same conclusion as plurality). The *Brooks* plurality opinion indicates that appellate courts should apply the *Jackson v. Virginia* standard in a "rigorous and proper" manner. *See id.* at 906, 912 (plurality op.). Presumably, by "rigorous" the plurality meant "scrupulously accurate: EXACT, PRECISE." WEBSTER'S THIRD NEW INT'L DICTIONARY 1957 (1993 ed.). Though the five justices in *Brooks* emphasized the importance of a scrupulous, accurate, and proper application of the *Jackson v. Virginia* standard, they did not purport to change the *Jackson v. Virginia* standard or the manner in which courts should apply it. *See Brooks*, 323 S.W.3d at 894–912; *id.* 323 S.W.3d at 912–26. Thus, the *Brooks* decision did not change the law regarding the *Jackson v. Virginia* standard and its application. In post-*Brooks* opinions the Court of Criminal Appeals has cited and applied prior precedent regarding the *Jackson v. Virginia* standard; the high court has not mentioned a rigorous application but has echoed the traditional language when describing the standard. *See York v. State*, 342 S.W.3d 528, 544 & n.93 (Tex. Crim. App. 2011); *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *Gear v. State*, 340 S.W.3d 743, 746–47 (Tex. Crim. App. 2011); *Blackman v. State*, No. PD-0109-10, —S.W.3d—,—, 2011 WL

1376732, at *6 (Tex. Crim. App. Apr. 13, 2011). Therefore, this court must review the evidence under the *Jackson v. Virginia* standard as articulated above.

A person commits the offense of murder if that person intentionally or knowingly causes the death of another or if that person intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of another. *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011). There is no dispute that Jones was the principal actor in the commission of Lee's murder.

Under the law of parties, the State may enlarge an accused's criminal responsibility to include acts in which he may not be the principal actor. *See* TEX. PENAL CODE ANN. § 7.01(a) (West 2011); *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996). When, as in this case, an accused is not the principal actor, the State must prove conduct constituting an offense plus an act committed by the defendant with intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Under the law of parties, a person is criminally responsible for an offense committed by another if, acting with the intent to promote or assist the commission of the offense, that person solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

To prove that an accused acted as a party to an offense, the State was required to show that appellant acted with the intent to promote or assist Jones in the commission of Lee's murder by soliciting, encouraging, directing, aiding, or attempting to aid Jones in commission of that offense. *See Martin v. State*, 753 S.W.2d 384, 386 (Tex. Crim. App. 1988); TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). In determining whether appellant participated as a party, this court may look to events occurring before, during, and after the commission of the offense to show an understanding and common design to commit a prohibited act. *See Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996) (op. on reh'g). Evidence is sufficient to sustain a conviction under the law of parties if it shows that the accused was physically present at the commission of the

6

offense and encouraged commission of the offense by either words or other agreement. *See Ransom*, 920 S.W.2d at 302; *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978); *Hoang*, 263 S.W.3d at 22. Because an agreement between parties seldom can be proven through words, the State may rely upon the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or common design to commit an offense. *See Ransom*, 920 S.W.2d at 302; *Hoang v. State*, 263 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Mere presence at the scene of the offense does not establish guilt as a party to the offense. *Porter v. State*, 634 S.W.2d 846, 849 (Tex. Crim. App. 1982). But presence at the scene is a circumstance tending to prove guilt, which, when combined with other facts, may suffice to show that the accused was a participant. *See Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987); *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979). In this case appellant not only was present when Lee was shot but appellant was engaging him while Jones readied the shotgun and fired.

Moreover, appellant took the lead in the heated exchange that culminated in the parking lot showdown. Appellant transported both the shooter and the shotgun to and from the murder scene. Appellant then deposited the shooter and the shotgun at a relative's home, and appellant did not reveal the location of either to law enforcement at the scene or in the various interviews that followed. Throughout the investigation appellant concealed his involvement.

Investigators testified that witnesses reported seeing a white Dodge Ram truck at the scene. According to the trial testimony of one investigating officer who spoke with three unnamed witnesses, investigators learned that an altercation between the occupants of two vehicles had broken out. The conflict involved, on one side, Lee and his girlfriend in one vehicle, and on the other side, appellant and Jones in appellant's truck. Appellant does not dispute that he drove the truck, that he participated in the heated roadway exchange, and that he was present at the scene when Lee was shot. Nor does appellant

7

dispute that the encounter with Lee escalated after the two drivers stopped their vehicles at the service station. The record reflects that the firearm Jones used was one that appellant kept behind the headrests in the backseat of his truck "for protection." The gun, which had been in the truck for at least six months, was not concealed but on top of the seat behind the window. According to appellant, he presumed that Jones knew about the firearm and had seen it in the back of the truck given that the two brothers-in-law spent time together.

Given the evidence that the altercation involved the occupants of both vehicles, the jury reasonably could have inferred that appellant and Jones were acting together as they both participated in the roadway encounter and as their heated exchange with Lee intensified to the point that the drivers of the vehicles pulled into the service station for a confrontation. The jury was entitled to believe that appellant worked with and assisted Jones by engaging Lee in the verbal altercation, by driving Jones and the firearm to the service station with the intention of facing off with Lee, and by exiting the truck and engaging Lee while Jones remained in the truck readying the shotgun.

The evidence shows the two brothers-in-law were acting in tandem with the common purpose of confronting the roadway stranger whose heated words they did not welcome. There is no suggestion from the record evidence that either Jones or appellant sought to avoid the conflict; the evidence shows that appellant, instead of driving away from a confrontation, drove straight toward one. All of the ingredients for a deadly encounter were present: a heated exchange, a refusal to walk away, escalating tensions, a shotgun within easy reach, and a driver (appellant) willing to bring them all together for a showdown.

The jury reasonably could have inferred from the evidence that (1) appellant exited the truck to draw Lee's attention while providing an accessible firearm and ammunition to Jones, (2) appellant, by getting out of the truck, walking within touching distance of Lee's vehicle and drawing Lee's attention, enabled Jones to be in a position to

8

shoot Lee, and (3) appellant effected a speedy getaway, transporting Jones and the gun to a location where the two cohorts could separate and get rid of the murder weapon. *See Hoang*, 263 S.W.3d at 23–24 (concluding that evidence was sufficient to support murder conviction as a party when the accused provided a loaded weapon to the shooter and maneuvered his vehicle in a way to facilitate the shooter's ability to hit the complainant's vehicle).

According to the record, after appellant heard the gun fire, he immediately returned to his truck and fled with Jones. A defendant can be convicted as a party if the evidence establishes that he participated in the commission of the offense by driving the getaway vehicle. *Thompson v. State*, 697 S.W.2d 413, 417 (Tex. Crim. App. 1985); *see also Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007) (recognizing that factfinder may draw inference of guilt from the circumstance of flight, serving as additional piece of incriminating circumstantial evidence supporting conviction). Appellant claims to be an "unknowing and unwitting" getaway driver; he claimed at trial that he did not know Lee had been fatally shot. Standing alone, proof that an accused assisted the principal actor in making a getaway is insufficient to sustain a conviction under the law of parties, even though the accused's conduct may constitute an independent offense of hindering apprehension or prosecution. *Valdez*, 623 S.W.2d at 321. But the evidence in the record supports a far greater role than merely transporting the shooter and murder weapon from the scene. The evidence shows appellant's knowing and active participation before, during, and after the deadly confrontation.

According to appellant's testimony, as read into evidence, he already had engaged Lee in a verbal altercation that led both drivers to pull into the service station to continue the heated exchange. Appellant knew he was well-equipped for a deadly confrontation. Appellant carried a firearm and ammunition in clear view in his truck and presumed that Jones, his frequent companion, was aware of the firearm. Appellant knew that Jones was aiming the shotgun in Lee's direction in the minutes following the heated verbal

9

altercation. According to appellant's testimony, the nature of the particular twelve-gauge, pump-action shotgun required Jones to take time to load the ammunition and pump the firearm before actually firing it. Thus, the loading, pumping, pointing, aiming, and shooting process was not instantaneous. Although appellant claimed that he did not see Jones loading the gun or firing the actual shot from the gun, appellant acknowledged that he heard the sound of the gun fire and was in the presence of both the shooter and the victim when the shot was fired.

The jury was free to disbelieve appellant's claim that he did not know Lee had been shot or fatally shot. *See Sharp*, 707 S.W.2d at 614 (providing that a jury, in assessing witnesses' credibility and demeanor, may reject an accused's exculpatory explanation); *Guevara v. State*, 297 S.W.3d 350, 358 (Tex. App.—San Antonio 2009, pet. ref'd). Likewise, the jury was free to disbelieve appellant's statements that he was an "unknowing and unwitting" getaway driver and to conclude that appellant lied about not seeing or knowing of the murder out of a consciousness of guilt. Indeed, the jury reasonably could have concluded that appellant was like one who douses combustibles with gasoline, strikes a match, and then cries that he is the unknowing and unwitting victim of the fire.

The jury could infer from the evidence that following the heated roadway encounter, appellant pursued Lee's vehicle to the service station with the intent of confronting him, that appellant brought an accessible firearm and ammunition to the scene of the altercation, that appellant and Jones communicated about the unfolding events en route to the showdown, that appellant continued to engage Lee in the heated exchange while Jones loaded, pumped, aimed, and fired the gun, and that appellant then drove his brother-in-law and the murder weapon away from the scene. *See Hoang*, 263 S.W.3d at 23–24; *Hernandez*, 171 S.W.3d at 355 (providing that the jury could have found that an accused should have anticipated the complainant being shot based on any one part of a plan to confront the complainant); *Banda v. State*, 758 S.W.2d 902, 904

10

(Tex. App.—Corpus Christi 1988, no writ) (noting that speedy getaway suggests conviction as a party, even though other evidence in case did not support conviction). Notably, appellant not only transported Jones from the murder scene but also secreted him to their relative's house. Appellant also allowed Jones to take appellant's shotgun with him as he exited the vehicle at the relative's house following the shooting. A jury reasonably could have inferred that appellant assisted Jones in fleeing the scene and in helping him dispose of the firearm that was used to kill Lee. *See Hoang*, 263 S.W.3d at 23 (concluding evidence was sufficient to support conviction as a party when an accused drove the alleged shooter from the scene and tried to cover up the crime); *see also Guevara*, 297 S.W.3d at 359 (involving a murder weapon that was never recovered). Likewise, the jury reasonably could have disbelieved appellant's account that he was unaware that anyone had been shot. Even under appellant's account, when he returned to the scene and learned of Lee's death, appellant did not notify authorities of his knowledge of or association with the offense. In the many times appellant spoke with investigators following the shooting, he repeatedly denied any involvement. Failing to notify authorities of a crime is not enough to sustain a conviction. *See Clayton*, 235 S.W.3d at 780. But, based on appellant's repeated failure to notify authorities of his involvement, a rational jury reasonably could have believed that appellant was not being truthful with authorities and concealed his knowledge about the offense as a way to mislead investigators about his role in the offense and to avoid apprehension and cover up his guilt. *See Guevara*, 297 S.W.3d at 359 (concluding evidence was sufficient to support conviction of murder as a party, in part, by the defendant's continued denial even after confronted by authorities); *see also Clayton*, 235 S.W.3d at 780–81 (considering, as part of sufficiency review, that defendant's failure to inform authorities of offense was related to incongruity in defendant's account of events and the fact that he fled the scene). As noted, the record supports a firm conclusion that appellant knowingly served as a "getaway driver" who helped the principal actor (Jones) flee the scene and dispose of the murder weapon, thus, supporting appellant's conviction as a party to the murder. *See*

*Thompson*, 697 S.W.2d at 417 (holding evidence was sufficient to support conviction based in part of the accused's role in driving the getaway vehicle); *Guevara*, 297 S.W.3d at 359 (concluding evidence was sufficient even though weapon was never recovered and the accused continued to deny involvement even after being confronted by authorities).

The Texas Legislature has determined that one who acts with the intent to promote or assist the commission of the offense and encourages, directs, aids, or attempts to aid another to commit the offense, cannot escape the consequences of his actions as a party. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). In viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found appellant guilty as a party to Lee's murder beyond a reasonable doubt. Therefore, the evidence is sufficient to support appellant's conviction.

## CONCLUSION

Sufficient evidence supports the jury's determination that appellant is just as guilty of murdering Lee as if appellant had pulled the trigger himself. The jury held appellant accountable for his role in the murder; the majority does not. Instead of reversing appellant's conviction, this court should overrule appellant's sufficiency challenge and address appellant's other issues. Because it does not, I respectfully dissent.

/s/    Kem Thompson Frost
       Justice

Panel consists of Justices Frost, Jamison, and McCally. (McCally, J., majority).

Publish — TEX. R. APP. P. 47.2(b).

12