**Davis Joseph HOANG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–01139–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 4, 2006.

Discretionary Review Refused
Oct. 4, 2006.

Steven R. Rosen, Houston, TX, for Appellant.

Jessica A. McDonald, Assitant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Appellant, Davis Joseph Hoang, pleaded not guilty to the felony offense of murder. *See* TEX. PEN.CODE ANN. § 19.02(b)(1)-(b)(2) (Vernon 2003). A jury found him guilty and sentenced him to 20 years in prison. In two issues, appellant contends the evidence is legally and factually insufficient to sustain his conviction. We conclude that the evidence is legally and factually sufficient to sustain appellant's conviction as a party to murder and therefore affirm. We thus need not address the sufficiency of the evidence to establish appellant's guilt as the primary actor. *See Ladd v. State*, 3 S.W.3d 547, 557 (Tex.Crim.App.1999) (holding when not possible to tell whether jury found appellant guilty on specific theory and jury charge authorizes jury to convict on several different theories, verdict of guilt will be upheld if evidence is sufficient on any one theory).

## Background

Katherine Nguyen, a friend of complainant, Steven Duc Tran, testified that on September 17, 2003, at 7:00 p.m., complainant took her to a friend's birthday party at a restaurant, where they joined about 25 people. Complainant sat at a table with appellant and Anthony Hoang, appellant's brother, consuming alcohol, while Katherine sat at another table. About one and one-half hours later, the group decided to move the party to a karoake bar.

Believing that complainant was too intoxicated to drive, Katherine asked someone to drive complainant's car to the karaoke bar. Complainant, Katherine, and Anthony rode together in a car driven by appellant. During the ride to the bar, Anthony asked complainant why they no longer hung out together, but the question appeared friendly, and everyone was getting along. The group made several short stops on the way, and Anthony and appellant continued to drink alcohol.

At around 12:30 in the morning, complainant retrieved his car keys and left the bar with Katherine. Appellant and Anthony also left the bar. As complainant's and appellant's cars approached the Southwest Freeway, complainant's car was in front of appellant's car. As complainant drove his car onto an entrance ramp to the Southwest Freeway, complainant told Katherine that he had heard a gunshot and said, "I hate when they're drunk because they always start shooting for no reason." Appellant then drove his car to the lane immediately to the left of complainant's car, and Katherine saw Anthony shoot at

least four gunshots into complainant's car, killing him. Appellant and Anthony quickly drove from the location. Katherine managed to stop the moving car on the side of the freeway, where she was met by Anh Lu and Misty Perez, who drove up behind them. Katherine told them that complainant was shot, and, although Katherine did not say who had shot complainant, Misty, Anthony's girlfriend, immediately thought it was Anthony. When Anh and Misty left the location, Misty called Anthony to tell him that complainant had been shot. She went to Anthony's house and saw appellant and Anthony, who both appeared nervous.

Appellant decided to return to the Southwest Freeway to see what had happened, while Anthony and Misty drove to Martin Vuong's house. Anthony gave Martin a bag that contained pieces of the gun that Anthony had used to kill complainant. Later that morning, at around 1:45 a.m., police officers arrested Anthony for driving while intoxicated (DWI). While officers were arresting Anthony, appellant approached and attempted to talk to them. The officers would not release Anthony's car to appellant because he was too intoxicated to drive, but they released it to Misty. When Anthony was arrested, he had a magazine for a Glock pistol in his pants and wore an ankle holster on his leg, but he had no firearm in is his immediate possession, although a .22 pistol was later found in the trunk of the car. The next morning, appellant and Jemille Javier, a friend of appellant and Anthony, instructed Misty not to tell anyone what had happened.

Jemille testified that she and appellant bailed Anthony out of jail for the DWI. Anthony asked Jemille to lie to police officers by telling them that she was in her car behind appellant's car on the Southwest Freeway, that she had followed appellant and Anthony home, and that nothing had happened on the way back to appellant's and Anthony's home. Jemille initially lied to the officers, but later recanted the story, ultimately telling them that she was at another location at the time of the shooting.

Later that day, as officers attempted to execute an arrest warrant for Anthony, they encountered appellant, who agreed to give a statement that was recorded on videotape at the police station. Appellant orally waived his statutory rights, which were read to him by Sergeant Ferguson. Appellant described himself and Anthony as "drunk" on the night of the shooting. He had driven Anthony, complainant and Katherine from the party at the restaurant to the karaoke bar, making several stops along the way. Appellant and Anthony left the bar in appellant's car and got behind a slow moving car. As appellant entered the entrance ramp onto the Southwest Freeway, he got his fully loaded Glock .40 caliber gun and shot once into the air "just for fun," explaining that "[w]hen I get drunk I just shoot the gun." Appellant initially told police officers that he was driving "normal" at around 80 miles per hour at the time of the shooting and that he was completely unaware that Anthony would shoot anyone, stating that he thought Anthony was "just going to shoot in the air." As the interview progressed, however, appellant changed his story. Appellant said that he was "assuming [Anthony] got mad at the car in front" of them because "they were driving slow" and that when Anthony asked appellant for the gun, Anthony said something like, "Fuck them niggers, give me the strap." Understanding that "strap" meant gun, appellant handed the gun to Anthony. Anthony told appellant to "pull up," and appellant tried "to hug up next to" and at "the same speed as the car next to me," while driving at about 50 to 60 miles per

hour. Anthony immediately shot the gun, emptying the whole clip. Appellant believed that Anthony's hand was completely out of appellant's car when the gun was fired because none of the fired hulls ended up in appellant's car. After the gunfire, Anthony told appellant to "floor it," and appellant drove to their parents' house. Anthony received a phone call from either Anh or Misty, telling him that complainant had been shot.

Appellant said on the videotape that he decided to return to the scene of the shooting "to see if [complainant] was okay," but when he got to the scene, he did not stay because police and paramedics were already there, causing appellant to believe that complainant was all right. When he returned to his house, appellant learned that Anthony had been arrested for DWI. Appellant bailed Anthony out of jail in the morning and told Anthony that he saw on the news that complainant had died. During the course of the evening, neither appellant nor Anthony had any arguments or disagreements with complainant, whom they considered a friend.

At trial, the State established that appellant purchased a Glock firearm from a licensed gun dealer four months before complainant's death. The State also presented testimony from a police officer who examined complainant's car. Complainant's car had nine bullet holes resulting from bullets that entered through the driver's side of the car. Complainant's car had bullet strikes only to the driver's car door area, with no strikes to the hood, rear, or tires. A medical examiner examined complainant's body and found five bullet holes on his left side.

At trial, the defense presented testimony from Anh Lu, Anthony and appellant. Anh testified that she saw appellant's car gradually switch lanes on the Southwest Freeway, ending up in the lane next to complainant's car, and that appellant drove the car normally, not trying to slow down or speed up as the gun was fired. Anthony testified that he pleaded guilty to murder and that appellant was not responsible for complainant's death. Anthony and appellant both testified that Anthony "grabbed" the Glock from appellant, appellant never handed Anthony the gun, Anthony never asked appellant to drive his car in any direction, and appellant never altered the course of his driving in any way intended to assist Anthony. Anthony also said that he was not shooting towards complainant's car. Appellant explained that his videotaped statement to police officers was involuntary and coerced, and that he made up the story on the videotape so that he could go home quickly.

### Sufficiency of Evidence

Appellant's challenge to the legal and factual sufficiency of the evidence is premised on his assertions that (1) there is no evidence that appellant intended to kill or cause serious bodily injury to complainant, (2) Anthony and complainant were friends and did not argue that night, (3) the evidence of appellant's involvement does not show that appellant knew that Anthony would shoot into complainant's car because there is no evidence of any prior agreement between appellant and Anthony for Anthony to shoot complainant, (4) the evidence of appellant's involvement does not show that appellant knew that Anthony was shooting into the car after appellant pulled alongside the car, and (5) no evidence shows that appellant "shared his brother's design" in committing a "road rage." Appellant argues that at most, the evidence establishes the criminal mental state of "recklessness" and thus appellant is not guilty of murder.

### Law of Parties

Our Texas penal code states that "[a] person is criminally responsible as a party

to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PEN.CODE ANN. § 7.01(a) (Vernon 2003). Criminal responsibility is defined in several ways, one of which is that the defendant, "acting with intent to promote or assist the commission of the offense . . . solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

When a party is not the "primary actor," the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex.Crim.App.1985); *Miller v. State*, 83 S.W.3d 308, 313 (Tex.App.-Austin 2002, pet. ref'd). Evidence is sufficient to sustain a conviction under the law of parties if it shows that the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement. *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex.Crim.App.1978); *Miller*, 83 S.W.3d at 313–14. Since an agreement between parties to act together in common design can seldom be proven by words, the State often must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense. *Miller*, 83 S.W.3d at 314. The agreement, if any, must be made before or contemporaneous with the criminal event, but in determining whether one has participated in an offense, the court may examine the events occurring before, during and after the commission of the offense. *Beier*, 687 S.W.2d at 3–4; *Miller*, 83 S.W.3d at 314. Circumstantial evidence may suffice to show that one is a party to an offense. *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim.App.1977); *Miller*, 83 S.W.3d at 314. While mere presence at the scene, or even flight, is not enough to sustain a conviction, such facts may be considered in determining whether an appellant was a party to the offense. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex.Crim.App.1979) (op. on reh'g); *Miller*, 83 S.W.3d at 314.

If the evidence, however, shows the mere presence of an accused at the scene of an offense or his flight from the scene, without more, then it is insufficient to sustain a conviction as a party to the offense. *Valdez*, 623 S.W.2d at 321; *Scott v. State*, 946 S.W.2d 166, 168 (Tex.App.-Austin 1997, pet. ref'd). Standing alone, proof that an accused assisted the primary actor in making his getaway is likewise insufficient, even though the accused's conduct may constitute the independent offense of hindering apprehension or prosecution. *Scott*, 946 S.W.2d at 168. Similarly, evidence that a person simply handed the deadly weapon to the attacker does not in and of itself show an intent to commit murder; intent can only be inferred from handing the attacker the deadly weapon "if other circumstances warrant." *Navarro v. State*, 776 S.W.2d 710, 714 (Tex.App.-Corpus Christi 1989, pet. ref'd); *see Cordova v. State*, 698 S.W.2d 107, 112 (Tex.Crim.App.1985).

### Legal Sufficiency of the Evidence

In a legal sufficiency review, we view all of the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to give their testimony. *Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App.2000). A jury is entitled to accept one version of the facts and

reject another, or reject any part of a witness's testimony. *Id.*

Viewing the evidence in a light most favorable to the jury's verdict, the evidence shows that appellant fired his Glock firearm into the air as his car entered the Southwest Freeway, as he sometimes did for fun when he was intoxicated. Anthony, who was also intoxicated, then became angry at the slow driver in front of appellant's car. Anthony used expletives about the people in the slow car and asked appellant for the gun, directing appellant to "pull up." Appellant then handed Anthony the gun and drove his car parallel to the slow driver's car, while Anthony unloaded nine rounds into complainant's car, killing complainant. The physical evidence shows multiple gunshots that struck into the driver's door of the car only and multiple gunshot wounds that struck complainant.

This evidence establishes that appellant assisted Anthony by giving him the loaded firearm that killed complainant, driving his car parallel to, close to, and at about the same speed as complainant's car, and enabling Anthony to be in a position to shoot complainant accurately and repeatedly. Moreover, appellant drove Anthony away from the location after the shooting and tried to cover up the crime by instructing Misty not to tell anyone what had happened. Accordingly, we hold that the evidence is legally sufficient to sustain appellant's conviction for murder as a party to the offense.

### Factual Sufficiency of the Evidence

"In a factual sufficiency review, we view all the evidence in a neutral light, both for and against the finding, and set aside the verdict if 'proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.'" *Vodochodsky v. State,* 158 S.W.3d 502, 510 (Tex.

Crim.App.2005) (quoting *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000)). "In conducting such a review, we consider all of the evidence weighed by the jury, comparing the evidence [that] tends to prove the existence of the elemental fact in dispute to the evidence [that] tends to disprove it. We are authorized to disagree with the jury's determination even if probative evidence exists which supports the verdict, but we must avoid substituting our judgment for that of the fact-finder." *Id.* The jurors are the exclusive judges of the facts, the credibility of the witnesses and the weight to be accorded their testimony. *Margraves,* 34 S.W.3d at 919. The jury is free to reject any or all evidence presented at trial. *Id.*

Evidence that tends to dispute appellant's guilt as a party to murder comes primarily from the trial testimony of appellant, Anthony and Anh. Appellant and Anthony testified that appellant was unaware of how Anthony felt about the slow driver. Also according to Anthony and appellant, Anthony grabbed the gun from appellant, rather than being handed the gun by appellant. Appellant, Anthony, and Anh also denied that appellant drove his car in any manner that would assist Anthony in shooting complainant. Additionally, appellant points to the undisputed evidence that shows that during their time together over the course of the evening, appellant and Anthony were friendly with complainant and no arguments or disagreements occurred among them.

Evidence that tends to prove appellant's guilt as a party to murder comes primarily from appellant's videotaped statement and the physical circumstances of the shooting. At the time of the shooting, Anthony and appellant were intoxicated. Appellant's videotaped statement includes appellant's admission that before handing the gun to Anthony, appellant knew that Anthony was

angry with the slow driver, because Anthony used expletives about the people in the slow car while requesting appellant's gun. At Anthony's request to "pull up," appellant drove the car "to hug up next to" complainant's car and at "the same speed." The physical evidence is consistent with appellant's statements made on the videotape that he drove his car parallel to and at the same speed as complainant's car. The tight pattern of gunshots that struck only the driver's area of complainant's car and the medical examiner's findings that complainant had five gunshot wounds that entered the left side of his body also suggest that the shooter's car was driving (1) at the same pace as complainant's car and (2) parallel to complainant's car for the entire shooting episode.

Although no evidence in the record suggests that either Anthony or appellant disliked or had a fight with complainant and no direct evidence suggests any prior agreement between appellant and Anthony to shoot complainant, there is evidence that appellant knew that Anthony was angry about the slow driver in front of them and that appellant knew that he and Anthony liked to shoot guns when they were drunk. The jury could have reasonably inferred that appellant assisted Anthony in shooting the slow driver because appellant handed the gun to Anthony while knowing these circumstances, sped up, positioned his car next to the slow driver, sped away, and attempted to cover up the incident. We disagree with appellant's assertion that there is no evidence that he even knew that Anthony was shooting towards the driver of the slow car. The physical evidence shows multiple gunshots only to the driver's door of the slow moving car, and the medical examiner found multiple gunshot wounds to complainant's body. The physical evidence, therefore, confirms appellant's videotaped statement in which he acknowledged that he drove his car parallel to the slow moving car as Anthony shot the gun. The jury could reasonably infer that appellant acted with the intent to promote and assist Anthony's commission of the offense because appellant drove his car in a manner that facilitated Anthony's striking only the driver's car door area, including the driver of the car, multiple times at over 50 miles per hour on the freeway.

Appellant suggests that his situation is similar to *Vodochodsky v. State* in which the Court of Criminal Appeals reversed a capital murder conviction for factual insufficiency under the law of parties. 158 S.W.3d at 511. The court noted that there was no evidence of any specific mention of any intent to kill a peace officer, no suggestion in the record that Vodochodsky was planning the event with the shooter, no evidence that Vodochodsky did any affirmative act to assist the shooter with the plan, and that the evidence of a second shooter on the roof was "not established." *Id.* at 510. The court also noted that other evidence suggested that Vodochodsky was not working with the shooter because he whispered a warning to someone and did not purchase ammunition. *Id.* at 510–11. The court determined that "Vodochodsky had the bad luck of being the friend and roommate of a man determined to kill police officers and himself." *Id.* at 511. The court concluded that "proof of Vodochodsky's guilt was so weak as to undermine confidence in the jury's determination." *Id.* Unlike *Vodochodsky,* the circumstantial evidence in the record shows that appellant acted with intent to assist the shooter by committing the affirmative acts of handing the shooter the murder weapon and driving the car in a manner that facilitated the shooter's ability to hit his target, the slow driver, multiple times at over 50 miles per hour on a Houston freeway. It also shows that appellant

drove Anthony away from the scene of the crime, and that appellant attempted to cover up the incident.

Appellant also contends that his situation is similar to that in *Schiffert v. State*, in which the Fort Worth Court of Appeals found that evidence was factually insufficient to support a murder conviction because the proof of Schiffert's guilt was too weak to support the finding of guilt beyond a reasonable doubt. 157 S.W.3d 491, 498–99 (Tex.App.-Fort Worth 2004, pet. granted). In *Schiffert*, there was "no evidence of any kind of conversations or planning" on the part of Schiffert and the person who stabbed the deceased, and there was no evidence that Schiffert knew that the person who stabbed the deceased intended to stab the deceased or knew that the stabber "even had a knife." *Id.* at 498. The court further noted that a witness's testimony suggested that Schiffert may not have been aware that the deceased was being stabbed by the person and that Schiffert's attempts to avoid the police did not necessarily suggest that he had acted with intent to promote or assist in the stabbing. *Id.* Unlike *Schiffert*, the record includes evidence that appellant's firearm caused the death of complainant and that appellant handed his loaded gun to Anthony immediately before the shooting, knowing that Anthony was angry at the slow driver. Also unlike *Schiffert*, the circumstantial physical evidence leads to a reasonable inference that appellant was aware that Anthony was shooting his gun at the slow driver because appellant drove his car at the same approximate speed as and parallel to complainant's car, thereby enabling Anthony to accurately and repeatedly strike complainant.

Viewing all of the evidence in a neutral light, both for and against the jury's finding of guilt, we conclude that the proof of guilt is not so obviously weak as to undermine confidence in the jury's determination and that the proof of guilt is not greatly outweighed by contrary proof. *See Miller*, 83 S.W.3d at 318 (holding evidence factually sufficient to sustain murder conviction as party to offense when circumstances showed that Miller drove truck into position that enabled shooter to kill driver of car with whom Miller had been in traffic altercation, Miller assisted shooter, his brother, in obtaining murder weapon, and Miller attempted to flee with shooter). Accordingly, we hold that the evidence was factually sufficient to support the appellant's conviction as a party to the offense of murder.

### Conclusion

We affirm the judgment of the trial court.