**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-16-00055-CR

————————————

**BRANDON JEREMY REED, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1444601**

---

## MEMORANDUM OPINION

A jury convicted appellant Brandon Jeremy Reed of aggravated robbery and

assessed punishment at 65 years in prison and a fine of $10,000. *See* TEX. PENAL

CODE §§ 29.02, 29.03. On appeal, he does not suggest error in the jury instruction,

but he contends that the evidence was legally insufficient to support the verdict

because the charge did not authorize conviction under the law of parties if he carried out parts of the offense and his coconspirators carried out other parts of the offense. *See id*. § 7.01(a). Because Reed's argument is based on precedent that has been overruled by the Court of Criminal Appeals, and because the evidence is legally sufficient to support conviction under a hypothetically correct jury charge, we affirm.

## Background

Cristobal Guerrero went to a T-Mobile store seeking help with his phone. At the time he had nearly $1,500 in his wallet, which was an advance for supplies for a house-painting job. Nequituia Fisher was working an afternoon shift at that store, and she assisted Guerrero. They were the only two people in the store when a young man came in, asked a question about phone service, and quickly left.

Within five seconds, two other men entered the store. Both men were dressed in black. The first man had curly hair, and he brandished a silver-barreled revolver. The second man, Brandon Jeremy Reed, was bald, and his head was covered in tattoos. Reed wore a black bandana over the bottom of his face. Both Fisher and Guerrero were frightened. Fisher testified at trial that she thought she was "about to die."

Reed, who did not have a gun, approached Fisher, who was near the cash register. Reed told Fisher to get on her knees and face the wall. While Reed took

about $900 from the cash register and Fisher's phone from the counter, the gunman approached Guerrero and told him to "shut up" and look away. He forced Guerrero to the ground, held a gun to his head, hit him in the ribs, and grabbed his wallet. Then Reed and the gunman ran from the store.

Guerrero watched Reed and the gunman get into the passenger-side seats of a slow-moving, dark-colored car, which he later determined was a BMW that was being driven by the same man who entered the store seconds before the robbery. Upset that the money he needed for work had been taken, Guerrero followed the men in his car. While he drove, he called 911. He kept dispatch informed of his location as he pursued the men, carefully maintaining a distance of one or two car lengths to avoid detection.

While Guerrero was following the men, Harris County Sheriff's Deputy M. Gardenhi responded to the T-Mobile store. Fisher told him that her mobile phone and $900 from the cash register had been stolen.

Other Harris County sheriff's deputies reached Guerrero about five or six miles from the T-Mobile store. Guerrero identified the suspects' car, which was stopped in traffic nearby. Reed, the driver, and the gunman were arrested and handcuffed. Guerrero testified at trial that he recognized the men from the roles they played in the robbery immediately as they got out of the car.

The three men were taken back to the T-Mobile store where Fisher identified Reed as the man who took the money from the cash register, the gunman as the man who attacked Guerrero, and the driver as the man who had entered the store just before the robbery. Over $1,000 in cash was found in Reed's pocket, and all together the three men had in their possession approximately the same amount of money as was stolen from Guerrero and the T-Mobile store combined.[*] A search of the BMW found mobile phones, a shirt, a cap, a bandana, and a revolver with a bullet in the chamber.

Reed was charged with aggravated robbery. Both Fisher and Guerrero identified him at trial as the person who took the money from the cash register. The court's charge instructed the jury on the law of parties:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both.
>
> A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

---

[*] When Reed was arrested, he had $1,081 in cash in his pocket. The driver had $887, and the gunman had $251. This totals $2,219. Fisher testified that approximately $900 was taken from the store, and Guerrero testified that he had received $1,500 to purchase house painting supplies, but he had stopped that morning at a gas station to buy a pastry, so the total was a little less. Thus, the total estimated amount of cash stolen was around $2,300.

4

The jury found Reed guilty, and he appealed.

## Analysis

On appeal, Reed argues that the evidence is insufficient to support his conviction for aggravated robbery because the evidence shows that he committed only theft of property while another person used or exhibited a firearm. He argues that a conviction based on evidence that he committed some elements of the offense of aggravated robbery, while his co-conspirator committed other elements of aggravated robbery, was neither pleaded in the indictment nor authorized by the jury charge. Reed contends that the jury charge as written authorized a conviction only if he personally committed every element of aggravated robbery, or if he was a party to the crime and a co-conspirator committed every element of aggravated robbery.

Reed urges this court to follow *Benson v. State*, 661 S.W.2d 708 (Tex. Crim. App. 1982), for the proposition that the sufficiency of the evidence is measured on appeal by the charge that actually was given to the jury. 661 S.W.2d at 710. He asks this court disregard *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997), which introduced the "hypothetically correct jury charge" as the standard for sufficiency review on appeal. 953 S.W.2d at 239.

In *Malik*, the Court of Criminal Appeals abolished the *Benson* standard of sufficiency review. 953 S.W.2d at 239. While holding that "[n]o longer shall

sufficiency of the evidence be measured by the jury charge actually given," the Court also "recognize[d] that measuring sufficiency by the indictment is an inadequate substitute because some important issues relating to sufficiency—e.g., the law of parties and the law of transferred intent—are not contained in the indictment." *Id.* Thus, the Court held that evidence should be measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Id.* at 240. A hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* This standard is used "regardless of the specific wording of the jury charge actually given." *Id.*

To the extent that it arguably was raised by the brief, we consider the sufficiency of the evidence to support the jury's verdict.

In assessing legal sufficiency, we determine whether, based on all of the record evidence, viewed in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010). The jury is the sole judge of "the facts proved, and of the weight to be given

6

to the testimony." *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). In conducting our review of the legal sufficiency of the evidence, we do not reevaluate the weight and credibility of the evidence, rather we ensure only that the jury reached a rational decision by resolving evidentiary inconsistencies in favor of the verdict and deferring to the jury's credibility determinations. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *see Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).

As relevant to the facts of this case, a person commits aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE § 29.03(a)(2). A person commits robbery if he commits theft and, with intent to obtain or maintain control of the property, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2). A person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1).

The law of parties provides that a "person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE § 7.01(a). A person is criminally responsible for the conduct of another if, while

7

"acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. . . ." *Id.* § 7.02(a)(2). Under the law of parties, "the State is able to enlarge a defendant's criminal responsibility to include acts in which he may not have been the principal actor." *Ryser v. State*, 453 S.W.3d 17, 28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Goff v. State*, 931 S.W.2d 537, 544 (Tex. Crim. App. 1996)). The State need not plead in the indictment that it intends to prove culpability by a law-of-parties theory. *Marable v. State*, 85 S.W.3d 287, 288 (Tex. Crim. App. 2002).

The evidence at trial showed that Reed entered the T-Mobile store with a gunman who pointed a gun at both Fisher and Guerrero. Reed took approximately $900 from the cash register, which satisfies the elements of theft. *See* TEX. PENAL CODE § 31.03(a), (b)(1). Fisher testified that when the men entered the store together and she saw the gun, she was frightened and believed that she was going to die, which is sufficient to satisfy the additional element of robbery. *See id.* § 29.02(a)(2). Finally, both Fisher and Guerrero testified that the man who entered the T-Mobile store with Reed was holding a gun and pointing it toward them. A loaded revolver matching the description given to the sheriff's deputies by Guerrero was found in the BMW when Reed was arrested. A loaded gun is a deadly weapon. *See id.* § 1.07(a)(17)(A). This evidence is sufficient to support a

8

verdict that a deadly weapon was used in the commission of the robbery, satisfying the additional element needed to prove aggravated robbery. *See id.* § 29.03(a)(2).

"Evidence is sufficient to sustain a conviction under the law of parties if it shows that the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement." *Hoang v. State*, 263 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Often the State "must rely on the actions of the parties, shown by direct or circumstantial evidence, to establish an understanding or a common design to commit the offense." *Id.*

There was evidence that Reed, the gunman, and the driver were aiding and assisting each other in the commission of the offense. The driver entered and left the store seconds before Reed and the gunman entered it together. While Reed took money from the cash register and Fisher's phone from the counter, the gunman took money and a phone from Guerrero. Reed and the gunman left together and rode away in the same car, which was driven by the man who entered the store seconds before them. When Reed and the others were apprehended, the total amount of the money from the robbery had been divided among them.

Having considered the evidence in the light most favorable to the verdict, we hold that a rational jury could have found Reed guilty of all essential elements of

9

aggravated robbery beyond a reasonable doubt. *See Jackson*, 443 U.S. at 318–19,

99 S. Ct. at 2788–89; *Brooks*, 323 S.W.3d at 894–95.

We overrule Reed's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).