**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00312-CR

**ALVARO PADILLA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1810565**

## M E M O R A N D U M   O P I N I O N

Appellant Alvaro Padilla appeals his murder conviction. In his first issue, he challenges the sufficiency of the evidence to support the jury's verdict that he is guilty of murder under the law of parties. In his second issue, he contends the twenty-five-year sentence imposed by the trial court violates his constitutional rights because it is disproportionate to the ten-year sentence imposed on the shooter by a jury in a different trial. Appellant asserts a third and final issue, which we construe

as a complaint that his due process rights were violated because the trial court failed to include a deadly conduct lesser-included-offense instruction in the jury charge.

We overrule appellant's issues and affirm the trial court's judgment.

## Background

A grand jury indicted appellant with the first-degree felony offense of murder. Tex. Penal Code § 19.02(b). Appellant pleaded not guilty, and the case proceeded to trial before a jury. The State's theory was that appellant was guilty as a party to murder. *See id.* §§ 7.01, 7.02. The following evidence was presented at appellant's trial.

On March 14, 2020, appellant and the complainant, Ryan Lincoln, were involved in a road rage incident while driving southbound on I-45 in Harris County, which culminated in a gun shot fired from appellant's vehicle, striking Lincoln in the neck and killing him. Appellant drove a black Dodge Ram 2500 truck, while Lincoln drove a white Honda. Lincoln, a ride share driver, had mounted cameras on the dashboard of his Honda. Camera footage captured events leading up to the shooting, as well as the shooting itself, from two different angles—facing Lincoln and facing the interstate. State's Exhibit 107 contains the relevant video footage from both angles.

Houston Police Department ("HPD") Detective Dustin Crowder reviewed the video and testified to its contents. Appellant and Lincoln were driving the same direction in adjacent traffic lanes. Appellant's truck indicated a right lane change then merged in front of Lincoln's vehicle. Detective Crowder determined that appellant's lane change was unsafe due to the close proximity of the vehicles. Lincoln changed lanes to the left, accelerated past the driver's side of appellant's truck, and "flipped off" appellant. Next, appellant passed Lincoln's vehicle, quickly

pulled in front of Lincoln, and braked. Detective Crowder described this maneuver as "brake checking." Lincoln passed appellant once again and brake checked appellant in retaliation, forcing appellant to swerve his truck onto a grass median off the right shoulder lane. The video then depicts appellant's truck passing Lincoln on the driver's side again. As appellant drove past this time, a person occupying the right rear passenger seat in appellant's truck fired a gun toward Lincoln, striking him in the neck. Appellant fled the scene rapidly, while Lincoln exited the freeway and stopped his car.

HPD Officer Nicole Frerichs responded to the shooting and found Lincoln in his vehicle with an actively bleeding gunshot wound to his neck. Lincoln was transported to Ben Taub Hospital, where he died from his injuries. Dr. Roger Milton, an assistant medical examiner, confirmed the cause of death was a gunshot wound.

HPD Officer Kelly Huey assisted in the investigation and located appellant's truck four days after the shooting. Officer Huey testified that officers conducted a traffic stop on appellant's truck after appellant failed to maintain a single lane and caused another vehicle to stop. During the traffic stop, appellant and two other occupants—appellant's father, Antelmo Jimenez, and appellant's brother, John Padilla—were detained. Appellant, Antelmo, and John cooperated with the officers. Kristi Young, a crime scene supervisor with the Houston Forensic Science Center, recovered three guns from appellant's truck, including the gun identified as the murder weapon, which was found in plain sight at John's feet. The other two guns were located beneath the front passenger seat and on the rear center floorboard . Young testified that no guns were found near appellant or the driver's seat.

All three men were transported to an ATF facility to be interviewed regarding the Lincoln incident. At the ATF office, appellant waived his rights and agreed to an interview. Appellant claimed that Lincoln brake checked him numerous times,

3

was driving very aggressively, and shot at his truck. Appellant claimed that he fired a gun at Lincoln's car only after Lincoln shot at him. None of these statements were consistent with the dash camera video from Lincoln's vehicle. When informed that video captured the incident, appellant altered his statement to say that his cousin was in the truck and had shot at Lincoln's vehicle. After officers interviewed John, however, appellant changed his story again and admitted that his brother John was the shooter.

The indictment alleged that appellant: (1) intentionally and knowingly caused Lincoln's death by shooting him with a deadly weapon—a firearm; (2) intended to cause serious bodily injury to Lincoln and caused Lincoln's death by intentionally and knowingly committing an act dangerous to human life by shooting Lincoln with a deadly weapon—a firearm; or (3) committed and attempted to commit the felony offense of deadly conduct by knowingly discharging a firearm at and in the direction of Lincoln's vehicle and was reckless as to whether the vehicle was occupied, and while in the course and in furtherance of the commission, attempted commission, and immediate flight from the deadly conduct, he committed an act clearly dangerous to human life by discharging a firearm in the direction of Lincoln's vehicle and caused Lincoln's death.

The jury charge instructed the jury to determine whether appellant intentionally or knowingly caused Lincoln's death, or whether John intentionally or knowingly caused Lincoln's death and appellant intended to promote or assist John and in fact aided or attempted to aid John in committing the offense. The jury was instructed to consider self-defense and the lesser offenses of manslaughter or criminally negligent homicide if the evidence supported it. The jury found appellant guilty of murder and the trial court assessed his punishment at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division.

4

Appellant timely appealed.

**Analysis**

Appellant presents three issues for our review: (1) whether the evidence is sufficient to support the jury's verdict; (2) whether appellant's sentence violated the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution because appellant's sentence was significantly longer than the sentence another jury assessed against the shooter, appellant's brother John; and (3) whether appellant's right to a fair trial was violated when the trial court questioned the validity of submitting a jury instruction for the lesser-included offense of deadly conduct.

**A.      Sufficiency of the Evidence**

In issue one, appellant challenges the legal sufficiency of the evidence to support the jury's verdict. He does not contest the evidence that complainant was murdered, but he challenges the sufficiency of the evidence to support the jury's finding that he is guilty as a party to the offense.

We review the legal sufficiency of the evidence under the familiar *Jackson v. Virginia* standard. *See* 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. 2013). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We presume that the jury resolved conflicting evidence and inferences in favor of the verdict. *See Braughton v. State*, 569 S.W.3d 592, 607-08 (Tex. Crim. App. 2018); *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). In reviewing the evidence, we must remain mindful that we defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters.

*Jackson*, 443 U.S. at 326; *see Braughton*, 569 S.W.3d at 609. This standard applies to both direct and circumstantial evidence. *Criff*, 438 S.W.3d at 136-37.

We consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *See Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

We measure the evidence by the elements of the offense as defined by the hypothetically correct jury charge. *Braughton*, 569 S.W.3d at 608. A person commits the offense of murder if the person intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* Tex. Penal Code § 19.02(b)(2).

In Texas, any party to an offense may be charged with commission of the offense. *See id.* § 7.01(a), (b); *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). Under the law of parties, a person is criminally responsible as a party to the offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another person if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2); *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). To establish appellant's liability as a party, the State must prove illegal conduct by the primary actor and that appellant "harbored the specific intent to promote or assist the commission of the offense." *Rodriguez v. State*, 521 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

In performing a legal sufficiency analysis in a law of parties case, "we should look at events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Padilla v. State*, 326 S.W.3d 195, 201 (Tex. Crim. App. 2010). "The jury may infer the requisite mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). But without evidence of intentional participation by the accused, an accused may not be convicted under the law of parties. *Cary*, 507 S.W.3d at 758.

Mere presence at the scene of a crime or flight from the scene is insufficient to convict a defendant as a party to the offense. *Gross*, 380 S.W.3d at 186. However, flight from the scene together with additional evidence showing a mutual understanding and common design to commit the offense may be sufficient to support a guilty verdict. *See id.* This understanding can be inferred from circumstantial evidence, which includes the events "before, during, and after the commission of the offense." *Id.*

It is undisputed that John, appellant's brother, shot Lincoln and that Lincoln died. *See* Tex. Penal Code § 19.02(a)(1). The evidence shows that, at the time of the shooting, appellant and Lincoln were engaged in what can fairly be described as a road rage incident. After appellant and Lincoln cut each other off and "brake checked" one another, appellant positioned his truck to the left of Lincoln's vehicle, providing John with a direct line of sight to Lincoln's left side and enabling John to fire the shot that struck and ultimately killed Lincoln. Immediately after John fired the gun, appellant accelerated away. During his recorded interview, appellant

claimed that Lincoln shot at his vehicle first, but this was untrue. Appellant also falsely identified himself, then his cousin, as the shooter, only later admitting that John fired the gun.

In determining whether the above evidence is sufficient to support the jury's guilty verdict, we consider persuasive decisions from our sister courts of appeals that involved comparable road rage deaths. In *Hoang v. State*, the First Court of Appeals concluded that evidence was sufficient to support appellant's conviction as a party to murder when the appellant assisted the shooter by giving him a loaded firearm that killed the victim; drove his car parallel to, close to, and at about the same speed as the victim's car, which enabled the shooter to be in a position to shoot the victim; drove away from the location after the shooting; and tried to cover up the crime . *See* 263 S.W.3d 18, 23 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Similarly, in *Miller v. State*, the Third Court of Appeals determined that a witness's testimony that appellant, the driver of a vehicle, "pulled along the left side of [the victim's] car 'very slowly' before the passenger fired a fatal shot" and then "immediately fled the scene" provided evidence that the appellant "aided [the shooter] by positioning the [vehicle] to facilitate the shooting." 83 S.W.3d 308, 314 (Tex. App.—Austin 2002, pet. ref'd).

Here too, appellant maneuvered his truck into a position that enabled John to shoot at Lincoln; appellant quickly fled the scene immediately after the shooting; appellant falsely claimed that Lincoln shot at his vehicle first; and appellant lied about who fired the shot that ultimately killed Lincoln before admitting that his brother John was responsible.

The above evidence is legally sufficient to support a finding that John committed the offense of murder. The evidence supports a reasonable inference that John intended to cause serious bodily injury to Lincoln and caused Lincoln's death

8

by intentionally or knowingly committing an act clearly dangerous to human life by shooting Lincoln with a firearm. *See* Tex. Penal Code § 19.02(b)(2).

Viewing the evidence in the light most favorable to the jury's verdict, we also conclude that the evidence is sufficient to support a finding beyond a reasonable doubt that appellant is criminally responsible for the murder committed by John under the law of parties. Based on all of the evidence the jury could have reasonably found credible, including the video, the jury reasonably could have found that appellant aided or attempted to aid the murder. *See Hoang*, 263 S.W.3d at 23; *Miller*, 83 S.W.3d at 314-15; *see also Humaran v. State*, 478 S.W.3d 887, 896-97 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("Evidence is sufficient to convict under the law of parties where the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement.").

We overrule appellant's first issue.

## B. Unconstitutional Sentence

In his second issue, appellant contends that his sentence violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. We conclude, however, that appellant did not preserve this complaint for our review.

Before a complaint may be presented for appellate review, the record must show that the appellant raised the complaint to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *see Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd). With the exception of complaints predicated upon the violation of the narrow categories of absolute or waivable-only rights, a defendant forfeits a complaint, even a constitutional complaint, if he does not properly preserve it. *See State v. Dunbar*, 297 S.W.3d 777, 780 (Tex. Crim.

App. 2009); *Mendez v. State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004); *see also Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012).

The complaint appellant raises here—that his sentence violates the Fifth, Eighth, and Fourteenth Amendments—is the kind of complaint that is forfeited if not preserved. *See, e.g.*, *Banister v.* State, 551 S.W.3d 768, 769 (Tex. App.—Fort Worth 2017, no pet.); *Cerna v. State*, 441 S.W.3d 860, 867 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). A complaint that a sentence is grossly disproportionate or constitutes cruel and unusual punishment may be preserved by objecting at the punishment hearing or when the sentence is pronounced. *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *Kim*, 283 S.W.3d at 475. An appellant may raise a sentencing issue for the first time in a motion for new trial only if he did not have an opportunity to object when the sentence was imposed. *Burt*, 396 S.W.3d at 577 n.4.

In this case, the record does not show that appellant objected on Fifth, Eighth, or Fourteenth Amendment grounds when the sentence was pronounced at trial or that he lacked an opportunity to raise these objections. Appellant elected for the trial court to impose his sentence. After the trial judge pronounced a sentence of twenty-five years' confinement, appellant's counsel asked several questions of the judge but asserted no constitutional objections. Appellant did not raise his specific constitutional complaints until he filed his motion for new trial, and he does not claim on appeal that he lacked an opportunity to object on constitutional grounds when the sentence was imposed. Thus, we hold that appellant did not properly preserve this issue for our review. *See Burt*, 396 S.W.3d at 577 & n.4; *see also Zeller v. State*, No. 14-22-00809-CR, 2024 WL 2364432, at *4 (Tex. App.—Houston [14th Dist.] May 23, 2024, no pet.) (mem. op., not designated for publication) (defendant did not preserve cruel and unusual punishment complaint when he raised it for the

first time in his motion for new trial; he had the opportunity to timely object to his sentence but did not).

We overrule appellant's second issue.

## C.    Lesser-Included Instruction on Deadly Conduct

In his third issue, appellant contends that his due process rights were violated by the trial court's "questioning" of the validity of the lesser-included offense of deadly conduct. We construe this issue as a complaint that the trial court erroneously refused to submit a deadly conduct instruction in the jury charge.

A request for a lesser-included offense instruction is subject to the usual error preservation requirements. *See Williams v. State*, 662 S.W.3d 452, 460-61 (Tex. Crim. App. 2021). To be entitled to a lesser-included offense instruction, the defendant must point "to evidence in the record that raises the lesser-included offense," unless such evidence is apparent. *Id.*; *see also Olvera v. State*, __S.W.3d__, 2024 WL 1724454, at *4 (Tex. App.—Houston [14th Dist.] Apr. 23, 2024, no pet. h.).

Here, appellant requested lesser-included offense instructions for manslaughter, criminally negligent homicide, and deadly conduct. However, he did not point to any evidence supporting the propriety of a lesser-included instruction for deadly conduct. When the State asserted that such an instruction would be inappropriate because the evidence showed that Lincoln was killed, so "deadly conduct wouldn't be appropriate," appellant responded, "I may have to withdraw that, because the murder statute is a result." The court then stated, "I will withdraw the deadly conduct," and appellant responded, "That's fine, Your Honor." Later, appellant affirmatively stated he had no objection to the jury's charge, which did not include the deadly conduct instruction.

Under these circumstances, appellant did not properly preserve a complaint about the lack of a lesser-included instruction for deadly conduct. *See Olvera*, 2024 WL 1724454, at *4.

We overrule appellant's third issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/    Kevin Jewell
Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).