**Opinion issued July 6, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-19-00931-CV**

———————————

**JOSEPH RADLER, III, Appellant**

**V.**

**AMY PHILAVANH, Appellee**

On Appeal from the 311th District Court
Harris County, Texas
Trial Court Case No. 2009-20542

## MEMORANDUM OPINION

Appellant, Joseph Radler, III, challenges the trial court's August 30, 2019

Order in Suit to Modify the Parent-Child Relationship, entered after a bench trial,

granting in part, and denying in part, the petition of Radler to modify a previous

order in a suit affecting the parent-child relationship. In four issues, Radler contends

that the evidence is legally and factually insufficient to support the trial court's finding that Radler's gross monthly resources were at least $3,000 and the trial court erred in "appl[ying] [the] child support guidelines to [Radler's] gross monthly resources," "failing to apply [the] guidelines to decrease [Radler's] medical support [obligation]," and failing to make Radler's reduced child support obligation retroactive.

We affirm.

## Background

In 2006, Philavanh gave birth to her and Radler's minor child, J.G.P.R. On December 15, 2009, the trial court signed an Agreed Final Decree of Divorce. On May 5, 2015, the trial court signed an Agreed Order in Suit to Modify the Parent-Child Relationship (the "2015 order"). The 2015 order required Radler to pay $582.44 as his child support obligation each month beginning on November 1, 2014. The order also required Philavanh to provide health insurance for J.G.P.R. and ordered Radler to pay $282.32 as his medical support obligation each month to reimburse Philavanh for health insurance premiums beginning on November 1, 2014. The trial court ordered Philavanh to notify Radler of any changes in the cost of health insurance for J.G.P.R. and allowed Radler's medical support obligation to be changed accordingly.

On September 17, 2016, Radler filed a Petition to Modify the Parent-Child Relationship, alleging that a material and substantial change of circumstances had occurred since the 2015 order and that modification of that order would be in the best interest of J.G.P.R.  On October 6, 2017, Radler filed his First Amended Petition to Modify the Parent-Child Relationship, alleging that a material and substantial change of circumstances had occurred since the 2015 order and that modification of that order would be in the best interest of J.G.P.R.  Radler asserted that since the 2015 order, his income had changed and "the monthly amount of support ordered differ[ed] by at least twenty percent . . . or $100[] from the amount that would be awarded in accordance with the guidelines of Chapter 154 of the Texas Family Code." (Emphasis omitted.)  Radler requested that "[t]he current child support order in effect . . . be terminated," the amount of his monthly child support obligation be reduced, and that "any reduction be made retroactive to the time of service of [his First] Amended Petition on [Philavanh] or her attorney."

On February 7, 2019, Radler filed his Third Amended Petition to Modify the Parent-Child Relationship, continuing to allege that a material and substantial change of circumstances had occurred since the 2015 order and that modification of that order would be in the best interest of J.G.P.R.  Radler still asserted that since the 2015 order, his income had changed and "the monthly amount of support ordered differ[ed] by at least twenty percent . . . or $100[] from the amount that would be

3

awarded in accordance with the guidelines of Chapter 154 of the Texas Family Code." (Emphasis omitted.) Radler requested that "[t]he current child support order in effect . . . be terminated," the amount of his monthly child support obligation be reduced, and that "any reduction be made retroactive to the time of service of [his] First Amended Petition on [Philavanh] or her attorney."[1]

At trial, Radler testified that he graduated from law school in 2012. He is self-employed at his own law firm, the Radler Law Firm, and he has a non-profit organization, SOS Legal Aid, through which he represents clients who cannot afford to pay for legal services. Radler, relying on his 2018 federal tax return,[2] testified that his gross income from 2018 was $18,714, making his gross monthly resources $1,560. But Radler also admitted that the gross annual resources amount he calculated—$18,714—was "not exactly how much money c[a]me in" because "[m]ore money c[a]me[] in." Radler stated that in 2018, the total amount of money he made working for his law firm was $36,000.

Radler testified that he believed his net monthly resources were $1,155,[3] but he also stated during his testimony that his available net monthly resources were

---

[1]    Philavanh answered and filed a Counter-Petition to Modify the Parent-Child Relationship.

[2]    A copy of Radler's 2018 federal tax return was admitted into evidence at trial.

[3]    Radler stated that his net monthly resources for 2019 would be "similar" but he had not made any calculations for 2019.

$1,560.  Radler requested that the trial court set his child support obligation at $231 per month, which would be twenty percent of $1,155, and he asked that the trial court retroactively apply the reduced child support obligation to October 2017—the date when he filed his first amended petition.  As to his medical support obligation, Radler requested that the trial court set the amount of his medical support obligation at $140 per month and that the trial court retroactively apply the reduced medical support obligation to October 2017.

Radler also explained that he believed that certain deposits made into his bank accounts should not be considered income, including a $10,000 loan he received from a friend in 2018 and a certain payment from his insurance company because "[t]hat [insurance] money just passed through" his bank account.  Radler noted that he used a portion of the $10,000 loan to pay his past-due child support obligation.  Radler had multiple bank accounts, and he stated that he transferred money between his bank accounts.  He acknowledged that deposits were made into his personal bank account in 2018, and that Respondent's Exhibit 10 reflected the deposits made into Radler's personal bank account in 2018.  Those deposits totaled $45,741.04.  The $10,000 loan Radler received went into his other bank account.  Radler stated that some of the deposits in his personal bank account in 2018 were transfers from his other bank account.

As to his monthly expenses, Radler testified that his mortgage payment is about $1,024 per month and his car payment is about $176 per month.[4] Each month he spends about $150 on gas, $150 on utilities, $110 on cable, telephone, and internet, $400 on groceries, $67.50 on medical expenses, $90.64 on car insurance, $200 on eating at restaurants, $21.70 on a gym membership, and $100 on clothing and entertainment. Radler noted that he is "not paying [his] taxes" and that he used the $10,000 loan he received from his friend to pay his bills. According to Radler, although his monthly expenses exceeded the amount of net monthly resources that he testified were available to him, this was because he used money from his loan each month for his expenses and he did not believe that the $10,000 loan constituted income.

Philavanh testified that Radler's child support obligation at the time of trial was $582.44 per month and his medical support obligation was $270.40. According to Philavanh, when the cost of health insurance for J.G.P.R. decreased to $270.40, she notified Radler of the change and Radler began paying that amount.

During trial, the trial court admitted into evidence various exhibits relevant to Radler's resources.[5]

---

[4]    In another portion of his testimony, Radler stated that his car payment was $179.28 per month.

[5]    The Court has reviewed the complete record in this appeal, including all of the testimony and evidence presented to the trial court. *See* TEX. R. APP. P. 47.1; *Obernhoff v. Nelson*, No. 01-17-00816-CV, 2019 WL 4065017, at *18 n.19 (Tex.

6

In its August 30, 2019 Order in Suit to Modify the Parent-Child Relationship, the trial court set Radler's child support obligation at $400 per month beginning on August 1, 2019. The trial court did not modify Radler's medical support obligation. The trial court issued the following relevant findings of fact and conclusions of law:

***Findings of Fact – General***

. . . .

12. The [trial] [c]ourt signed a final Order in Suit to Modify [the] Parent-Child Relationship on August 30, 2019.

. . . .

***Findings of Fact – Modification***

14. The prior orders to be modified are the Agreed Final Decree of Divorce signed by this Court on December 15, 2009, and the Agreed Order in Suit to Modify [the] Parent-Child Relationship signed by this Court on May 5, 2015.

. . . .

30. The amount of child support ordered by the Court is not in accordance with the percentage guidelines.

31. . . . Radler is a licensed attorney practicing in the State of Texas.

32. . . . Radler is capable of full-time work as an attorney.

---

App.—Houston [1st Dist.] Aug. 29, 2019, no pet.) (mem. op.); *Sullivan v. Arguello Hope & Assocs., PLLC*, No. 03-18-00144-CV, 2018 WL 6424200, at *1 n.2 (Tex. App.—Austin Dec. 7, 2018, no pet.) (mem. op.) ("Because the parties are familiar with the facts of the case . . . , we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it.").

33.    . . . Radler has gross monthly resources of at least $3,000[] per month.

34.    The percentage applied to the first $8,550 of . . . Radler's net resources for child support is twenty percent (20%).

35.    If the percentage guidelines were applied, . . . Radler's current child support obligation would have been at least $470[] per month.

36.    . . . Radler's current child support obligation is $400[] per month.

37.    The difference between the amount of child support that could have been ordered under the guidelines of the Texas Family Code and the amount of child support actually ordered is at least $70[] per month.

38.    The Court deviated from the child support guidelines in consideration of the additional periods of visitation awarded to . . . Radler.

39.    The amount of child support ordered is in the best interest of the child.

. . . .

44.    The modifications to the prior orders granted in this case are in the best interest of the child.

45.    Any requests for modification of the prior orders that were not granted in this case were denied.

46.    All other terms of the prior orders not specifically modified in this case shall remain in full force and effect.

. . . .

8

*Conclusions of Law*

. . . .

13.    The amount of child support ordered by the Court is not in accordance with the percentage guidelines.

14.    . . . Radler should pay child support to . . . Philavanh in the amount of $400[] per month.

. . . .

17.    The modifications to the prior orders granted in this case are in the best interest of the child.

18.    Any requests for modification of the prior orders that were not granted in this case were denied.

19.    All other terms of the prior orders not specifically modified in this case shall remain in full force and effect.

**Child Support**

In his first and second issues, Radler argues that the trial court erred in setting his child support obligation at $400 per month because "no evidence" supports the trial court's finding that Radler "had gross monthly resources of 'at least' $3,000 per month," "[t]he great weight of the evidence support[ed] [Radler's] claim[] that he made . . . $1,560 per month . . . at the time of trial," and the trial court arbitrarily determined the amount of Radler's gross monthly resources.

Trial courts have wide discretion in determining issues of custody, control, possession, support, and visitation matters involving children. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex.

App.—Houston [1st Dist.] 2002, pet. denied); *In re K.M.B.*, 606 S.W.3d 889, 894 (Tex. App.—Dallas 2020, no pet.) ("The trial court has broad discretion to set or modify child support."). Most of the appealable issues in a family-law case, including issues related to child support, are reviewed for an abuse of discretion. *Reddick v. Reddick*, 450 S.W.3d 182, 187 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Thus, we will not disturb a trial court's modification of a child support obligation absent a clear abuse of discretion. *See In re K.M.B.*, 606 S.W.3d at 894; *In re H.J.W.*, 302 S.W.3d 511, 513 (Tex. App.—Dallas 2009, no pet.); *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In making this determination, we view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *In re K.M.B.*, 606 S.W.3d at 894; *Holley*, 864 S.W.2d at 706.

Under an abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *In re K.M.B.*, 606 S.W.3d at 894; *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Review in this context is two-pronged: an appellate court determines whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in applying

10

its discretion because it made an unreasonable decision. *Stamper v. Knox*, 254 S.W.3d 537, 542 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). Traditional sufficiency review comes into play under the first prong. *Stamper,* 254 S.W.3d at 542; *Zeifman*, 212 S.W.3d at 588. We then determine whether, based on the evidence, the trial court made a reasonable decision. *West v. West*, No. 01-14-00350-CV, 2016 WL 1719328, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 2016, no pet.) (mem. op.); *Zeifman*, 212 S.W.3d at 558. A trial court does not abuse its discretion if some evidence of substantive and probative character supports its decision. *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Holley*, 864 S.W.2d at 706.

Here, the trial court issued findings of fact and conclusions of law. A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions, and we review the legal and factual sufficiency of the evidence supporting those findings using the same standards that we apply to jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for evidentiary sufficiency. *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.).

11

In a bench trial, the trial court, as the trier of fact, is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 530 (Tex. App.—Houston [1st Dist.] 1994, no writ). The trial court may choose to believe some witnesses over others. *Martinez v. Lopez*, No. 01-09-00951-CV, 2011 WL 2112806, at *3 (Tex. App.—Houston [1st Dist.] May 26, 2011, no pet.) (mem. op.). We are mindful that "the trial [court] is best able to observe and assess the witnesses' demeanor and credibility, and to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (internal quotations omitted).

The Texas Family Code establishes guidelines for setting monthly child support obligations in suits affecting the parent-child relationship. *See Grotewold v. Meyer*, 457 S.W.3d 531, 534 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The first step in determining a monthly child support obligation is to calculate, if feasible, the gross annual resources of the obligor parent. *See* TEX. FAM. CODE ANN. § 154.061(a) (requiring, when feasible, calculation of gross income on annual basis); *Stringfellow v. Stringfellow*, 538 S.W.3d 116, 118 (Tex. App.—El Paso 2017, no pet.); *Grotewold*, 457 S.W.3d at 534; *see also* TEX. FAM. CODE ANN. § 154.062(b) (listing income to be included in calculation of parent's resources). Resources include several types of income, including self-employment income and "all other

income actually being received." TEX. FAM. CODE ANN. § 154.062(a), (b); *Baxley v. Baxley*, No. 01-10-00570-CV, 2011 WL 2504216, at \*3 (Tex. App.—Houston [1st Dist.] June 23, 2011, no pet.) (mem. op.); *see also In re P.C.S.*, 320 S.W.3d 525, 537 (Tex. App.—Dallas 2010, pet. denied) (language of Texas Family Code section 154.062(b) indicates legislature intended "all receipts of money that are not specifically excluded by the statute . . . , whether nonrecurring or periodic, whether derived from the obligor[] [parent's] capital or labor or from that of others, must be included in the definition of 'resources'").

An obligor parent's average gross monthly resources is determined from the parent's gross annual resources. *See* TEX. FAM. CODE ANN. § 154.061(a); *Grotewold*, 457 S.W.3d at 534. To make that determination, the trial court first divides the gross annual resources of the obligor parent by twelve to reach his average gross monthly resources. *See* TEX. FAM. CODE ANN. § 154.061(a); *Stringfellow*, 538 S.W.3d at 118. Next, from the gross monthly resources, certain tax deductions are made. *See* TEX. FAM. CODE ANN. § 154.062(d); *Stringfellow*, 538 S.W.3d at 118. The Office of the Attorney General is responsible for annually promulgating charts that compute net monthly income from gross monthly income by deducting certain taxes from gross monthly wages. *See* TEX. FAM. CODE ANN. § 154.061(b) (requiring Title IV-D agency to annually promulgate tax charts); *Stringfellow*, 538 S.W.3d at 118; *Grotewold*, 457 S.W.3d at 534; *see also* TEX. FAM.

13

CODE ANN. § 231.001 (designating Office of Attorney General as Title IV-D agency in Texas). Once net monthly resources are determined, the Texas Family Code allows certain further deductions. *See* TEX. FAM. CODE ANN. § 154.062(d); *Stringfellow*, 538 S.W.3d at 118; *Grotewold*, 457 S.W.3d at 534.

After the final net monthly resources are computed, the trial court applies the child support percentage guidelines under the Texas Family Code to set the amount. *See* TEX. FAM. CODE ANN. § 154.125(b). For a single child, the guidelines set an obligor parent's child support obligation at twenty percent of the obligor parent's net monthly resources. *See id.*; *Grotewold*, 457 S.W.3d at 534; *see also* TEX. FAM. CODE ANN. § 154.122(a) (amount of support determined by the child support guidelines is presumed to be appropriate amount of support). The amount of support owed under the guidelines is presumptively in the child's best interest when the obligor parent's net monthly resources do not exceed $7,500. *See* TEX. FAM. CODE ANN. §§ 154.122(a), 154.125(a).

Radler asserts that "no evidence" supports the trial court's finding that his gross monthly resources were at least $3,000. Instead, he asserts that his testimony showed that his gross monthly resources were $1,560.

At trial, Radler testified, relying on his 2018 federal tax return—a copy of which was admitted into evidence—that his gross income in 2018 was $18,714 and his gross monthly resources were $1,560. But Radler also testified that the $18,714

14

gross annual resources amount that he calculated did not equal "exactly how much money c[a]me in" because "[m]ore money c[a]me[] in." According to Radler, the total amount of money that he made working at his law firm in 2018 was $36,000. *See* TEX. FAM. CODE ANN. § 154.062(b) (resources include self-employment income and "all other income actually being received"); *In re P.C.S.*, 320 S.W.3d at 537 (language of Texas Family Code section 154.062(b) indicates legislature intended "all receipts of money that are not specifically excluded by the statute . . . , whether nonrecurring or periodic, whether derived from the obligor[] [parent's] capital or labor or from that of others, must be included in the definition of 'resources'"). If Radler's gross annual income for 2018 was $36,000 then his average gross monthly resources were $3,000. *See* TEX. FAM. CODE ANN. § 154.061(a) (gross income should first be computed on annual basis and then should be recalculated to determine average gross monthly income).

Radler also testified that he received a $10,000 loan from a friend in 2018, although he thought that certain deposits into his bank accounts, including the $10,000 loan, should not be considered income. *But see* TEX. FAM. CODE ANN. § 154.062(b) (resources include "all other income actually being received"); *In re P.C.S.*, 320 S.W.3d at 537 (language of Texas Family Code section 154.062(b) indicates legislature intended "all receipts of money that are not specifically excluded by the statute . . . , whether nonrecurring or periodic, whether derived from

15

the obligor[] [parent's] capital or labor or from that of others, must be included in the definition of 'resources'").

The trial court admitted into evidence Respondent's Exhibit 10, as well as other exhibits, which Radler acknowledged showed the deposits that were made into his personal bank account in 2018. Those deposits totaled $45,741.04 and did not include the $10,000 loan, which Radler deposited into his other bank account. *See Bello v. Bello*, No. 01-11-00594-CV, 2013 WL 4507876, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 22, 2013, no pet.) (mem. op.) (deposits in bank account are probative of obligor parent's resources); *Baxley*, 2011 WL 2504216, at *3; *Burney v. Burney*, 225 S.W.3d 208, 214 (Tex. App.—El Paso 2006, no pet.) (holding trial court properly relied on bank account deposits in determining obligor parent had higher salary than indicated by his tax returns). If Radler's gross annual income for 2018 was $45,741.04 then his average gross monthly income was $3,811.75. *See* TEX. FAM. CODE ANN. § 154.061(a) (gross income should first be computed on annual basis and then should be recalculated to determine average gross monthly income); *see also Swaab v. Swaab*, 282 S.W.3d 519, 526 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.) (if obligor parent's income fluctuates, court may average such income to calculate child support obligations under statutory guidelines).

Radler relies exclusively on his testimony that his gross annual income was $18,714 and that his gross monthly resources were $1,560 to assert that the trial court erred in finding that his gross monthly resources were at least $3,000. *Cf. In re H.D.V., Jr.*, No. 05-15-00421-CV, 2016 WL 4492702, at *10 (Tex. App.—Dallas Aug. 26, 2016, pet. denied) (mem. op.) (noting in his brief, father relied solely on his evidence and made no mention of evidence from which trial court could have concluded that amount of his resources was much higher than father represented; trial court was free to disbelieve father's evidence and credit mother's evidence). But the trial court in a bench trial is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Hatteberg*, 933 S.W.2d at 530. The trial court may choose to believe some witnesses over others, and it may choose to believe part of a witness's testimony while disregarding other portions of his testimony. *See Martinez*, 2011 WL 2112806, at *3*; Royal Zenith Corp. v. Martinez*, 695 S.W.2d 327, 330 (Tex. App.—Waco 1985, no writ); *see also Lubbock Cty. v. Strube*, 953 S.W.2d 847, 854 (Tex. App.—Austin 1997, pet. denied) (fact finder's responsibility to determine the credibility of witnesses, choose which portions of testimony to believe or disbelieve, and weigh evidence). A trial court is also not bound to accept the conclusive statement of a witness or any internally inconsistent explanations. *See Royal Zenith Corp.*, 695 S.W.2d at 330.

17

Additionally, even though Radler directs this Court to the copies of his federal tax returns that were admitted into evidence to support his assertion that his gross annual income was $18,714 and his gross monthly resources were $1,560, tax returns are not determinative of the gross resources' calculation. *See In re S.M.H.*, No. 07-18-00148-CV, 2019 WL 5799983, at *3 (Tex. App.—Amarillo Nov. 6, 2019, pet. denied) (mem. op.) (fact finder not bound to accept representations in federal tax return when calculating obligor parent's annual resources); *Freeze v. Ramirez*, No. 04-18-00213-CV, 2019 WL 2014988, at *2 (Tex. App.—San Antonio May 8, 2019, no pet.) (mem. op.) (trial court may determine obligor parent's income is greater than adjusted gross income listed on his tax returns); *In re M.A.B.*, No. 11-05-00034-CV, 2006 WL 893613, at *2 (Tex. App.—Eastland Apr. 6, 2006, no pet.) (mem. op.) (holding "trial court was justified in determining that [obligor parent's] actual income was much greater than the adjusted gross income listed on his tax returns"); *see also In re B.Q.T.*, No. 05-14-00480-CV, 2016 WL 861633, at *2 (Tex. App.—Dallas Mar. 7, 2016, no pet.) (mem. op.) ("[F]ederal income tax regulations are distinct from the rules in the family code, and calculations prepared under one set of rules do not necessarily comply with the requirements of the other."); *Powell v. Swanson*, 893 S.W.2d 161, 163 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("[F]ederal income tax regulations and [Texas] Family Code provisions [do not] mirror each other in method of calculating income.").

18

Here, some evidence of substantive and probative character supports the trial court's determination that Radler's gross monthly resources were at least $3,000. Thus, we hold that the trial court did not err in finding Radler's gross monthly resources to be at least $3,000 and modifying Radler's child support obligation accordingly.

We overrule Radler's first and second issues.

## Medical Support

In his third issue, Radler argues that the trial court erred in failing to reduce his medical support obligation because the Texas Family Code mandates that Radler's medical support obligation be no more than nine percent of his annual resources.

Texas courts are required to order medical support in suits affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. §§ 154.008, 154.181; *Montes v. Filley*, 359 S.W.3d 260, 263 (Tex. App.—El Paso 2011, no pet.). Medical support includes health insurance coverage. *Montes*, 359 S.W.3d at 263. We review a trial court's order pertaining to medical support and health insurance for a child for an abuse of discretion. *See Sink v. Sink*, 364 S.W.3d 340, 347 (Tex. App.—Dallas 2012, no pet.); *Montes*, 359 S.W.3d at 263; *see also Reddick*, 450 S.W.3d at 187 (most of appealable issues in family-law cases are reviewed for abuse of discretion); *In re D.T.M.*, No. 01-01-00241-CV, 2002 WL 31521151, at *5 (Tex. App.—Houston [1st

Dist.] Nov. 14, 2002, no pet.) (not designated for publication) (trial court has broad discretion in modifying prior support order). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford*, 801 S.W.2d at 109.

Texas Family Code section 154.182 addresses health insurance coverage for a child in a suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 154.182; *In re D.P.B.*, No. 05-17-00185-CV, 2018 WL 3014628, at *3 (Tex. App.—Dallas June 15, 2018, no pet.) (mem. op.). If the parent ordered to provide health insurance for a child is the parent who is receiving child support (the obligee parent), the trial court must order the parent who pays child support (the obligor parent) to pay the obligee parent, as additional child support, "an amount equal to the actual cost of health insurance for the child, but not to exceed a reasonable cost to the obligor." TEX. FAM. CODE ANN. § 154.182(b-1); *see also Hontanosas v. Hontanosas*, No. 13-18-00309-CV, 2012 WL 432642, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 9, 2012, no pet.) (mem. op.) ("Medical support for a child is a child support obligation."). "[R]easonable cost," "if the obligor [parent] is responsible . . . for the cost of health insurance coverage for only one child," means "the cost of health insurance coverage for a child that does not exceed nine percent of the obligor[] [parent's] annual resources, as described by [Texas Family Code] [s]ection 154.062(b)." TEX. FAM. CODE ANN. §§ 154.181(e) (internal quotations

20

omitted), 154.182(c)(2) (internal quotations omitted); *see also* TEX. FAM. CODE ANN. § 154.062(b).

The 2015 order required Philavanh to provide health insurance for J.G.P.R. and required Radler to pay $282.32 as his medical support obligation each month to reimburse Philavanh for health insurance premiums beginning on November 1, 2014. Philavanh was also ordered to notify Radler of any changes in cost of health insurance for J.G.P.R.

Philavanh testified that Radler's medical support obligation at the time of trial was $270.40 and she had notified Radler of the change in cost of health insurance for J.G.P.R. in accord with the 2015 order. After the change, Radler began paying $270.40. The trial court did not reduce Radler's medical support obligation in its August 30, 2019 Order in Suit to Modify the Parent-Child Relationship. Instead, it denied Radler's request to do so.

Radler first argues that the trial court was obligated to reduce his medical support obligation to $140.40 per month because his gross annual resources were $18,714 and nine percent of $18,714 purportedly results in a monthly medical support obligation of $140.40. But the trial court found that Radler's gross monthly resources were at least $3,000—meaning that it impliedly found that his gross annual resources were at least $36,000, rather than $18,714 as Radler asserts. We have already held that the trial court did not err in determining that Radler's gross monthly

resources were at least $3,000. Thus, we cannot conclude that the trial court erred in failing to reduce Radler's medical support obligation to $140.40 per month.

Radler next argues that the trial court should have reduced his medical support obligation to $270 per month because the trial court calculated his gross monthly resources to be $3,000 and impliedly found that his gross annual resources were $36,000. And nine percent of $36,000 results in a monthly medical support obligation of $270. But the trial court did not find that Radler's gross monthly resources were $3,000 and that his gross annual resources were $36,000. Instead, the trial court found that Radler's gross monthly resources were *at least* $3,000 and impliedly found that Radler's gross annual resources were *at least* $36,000. Again, we have held that the trial court did not err in determining that Radler's gross monthly resources were at least $3,000. Thus, we cannot conclude that the trial court erred in failing to reduce Radler's medical support obligation to $270 per month.

Finally, we note that the difference between Radler's medical support obligation under the 2015 order ($270.40) and the modified medical support obligation that he asserts the trial court should have ordered ($270) is $0.40. In his briefing, Radler states that he is not attempting "to gain a reduction of $0.40 per month in [his] medical support obligation" and waives any request for a $0.40 reduction to his medical support obligation. *Cf. Ballard v. First Nat'l Bank of Trenton*, No. 06-09-00111-CV, 2010 WL 2574036, at *1 (Tex. App.—Texarkana

June 29, 2010, no pet.) (mem. op.) (appellate court could not grant relief not requested); *Jay Petroleum, L.L.C. v. EOG Res., Inc.*, 332 S.W.3d 534, 538 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (court cannot grant relief party has not requested).

Based on the above, we hold that the trial court did not err in failing to reduce Radler's medical support obligation.

We overrule Radler's third issue.

## Retroactivity of Child Support Obligation

In his fourth issue, Radler argues that the trial court erred in failing to make his reduced child support obligation retroactive because Philavanh's purported "dilatory litigation tactics overcomplicated and unnecessarily prolonged what would have otherwise been a simple case[] and . . . created the opportunity for . . . Radler to fall deeper and deeper into arrears unnecessarily."[6] *Cf. In re H.S.N.*, 69 S.W.3d 829, 833 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) ("The purpose of allowing child support to be modified retroactive to the date of the original request is to remove any motive on the part of the obligor [parent] to engage in delay tactics."); *In re J.G.Z.*, 963 S.W.2d 144, 149 (Tex. App.—Texarkana 1998, no pet.).

---

[6] We need not address the portion of Radler's fourth issue in which he asserts that the trial court erred in failing to make his reduced medical support obligation retroactive because the trial court did not reduce Radler's medical support obligation and we have held that the trial court did not err in not reducing Radler's medical support obligation. *See* TEX. R. APP. P. 47.1.

23

We review a trial court's ruling on a request to modify child support retroactively for an abuse of discretion. *See In re I.J.R.*, No. 05-09-00565-CV, 2011 WL 711639, at *4 (Tex. App.—Dallas Mar. 2, 2011, no pet.) (mem. op.); *In re G.K.D.*, No. 07-07-0072-CV, 2009 WL 136935, at *1 (Tex. App.—Amarillo Jan. 21, 2009, no pet.) (mem. op.); *In re Naylor*, 160 S.W.3d 292, 294 (Tex. App.—Texarkana 2005, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford*, 801 S.W.2d at 109.

Texas Family Code section 156.401(b) empowers a trial court to retroactively modify child support obligations. *See* TEX. FAM. CODE ANN. § 156.401(b); *In re Naylor*, 160 S.W.3d at 294. While the trial court is afforded discretion to order retroactive child support, retroactive modification of a child support obligation is not required. *See In re H.J.W.*, 302 S.W.3d at 514 (noting Texas Family Code generally prohibits retroactive modification of child support); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 582 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). A child support order may be modified with regard to the amount of support ordered only as to child support obligations "accruing after the earlier of: (1) the date of service of citation; or (2) an appearance in the suit to modify." TEX. FAM. CODE ANN. § 156.401(b). To justify retroactive modification of child support, the evidence must directly support a retroactive modification. *See McLane v. McLane*, 263 S.W.3d

24

358, 367 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Nordstrom*, 965 S.W.2d at 582; *see also Grundy v. Grundy*, 589 S.W.2d 776, 778 (Tex. App.—Dallas 1979, no writ).

Although Radler asserts in his opening brief that the trial court should have ordered Radler's reduced child support obligation to apply retroactively because Philavanh engaged in "dilatory litigation tactics [that] overcomplicated and unnecessarily prolonged what would have otherwise been a simple case[] and . . . created the opportunity for . . . Radler to fall deeper and deeper into arrears unnecessarily," Radler does not provide this Court with any citation to the record showing that he presented evidence of such "dilatory litigation tactics" to the trial court at trial. *See* TEX. R. APP. P. 38.1(i) (appellant's brief "must contain a clear and concise argument for the contentions made, with *appropriate citations* to . . . the record" (emphasis added)); *In re S.R.V.*, No. 04-17-00556-CV, 2018 WL 626533, at *3 (Tex. App.—San Antonio Jan. 13, 2018, no pet.) (mem. op.) (appellate court has no duty to search appellate record for facts to support appellant's argument); *see also Burgess v. Feghhi*, No. 12-04-00367-CV, 2007 WL 2178544, at *15 (Tex. App.—Tyler July 31, 2007, pet. denied) (mem. op.) (appellant's burden to present sufficient record to appellate court to show error requiring reversal). And the two citations to the reporter's record from trial that Radler refers this Court to in his reply brief, do not support his assertion that Philavanh engaged in "dilatory litigation tactics" that

25

justified a retroactive modification of Radler's child support obligation. *See* TEX. R. APP. P. 38.1(i); *In re S.R.V.*, 2018 WL 626533, at \*3; *see also Burgess*, 2007 WL 2178544, at \*15.

Evidence presented at trial must directly support a retroactive modification of a child support obligation. *See McLane*, 263 S.W.3d at 368; *Nordstrom*, 965 S.W.2d at 582 (simple testimony that parent wanted support modification to apply retroactively back to date motion to modify was filed did not constitute evidence directly supporting retroactive modification). Radler has not referred this Court to any evidence presented at trial that supported his request for his reduced child support obligation to apply retroactively because Philavanh had purportedly engaged in "dilatory litigation tactics." *Cf. In re C.S.*, No. 11-12-00294-CV, 2014 WL 972310, at \*5 (Tex. App.—Eastland Mar. 6, 2014, no pet.) (mem. op.) (parent failed to present evidence at trial regarding whether modification of child support obligation should be applied retroactively); *In re Naylor*, 160 S.W.3d at 294–95 (trial court did not err in failing to make modified child support obligation retroactive to date petition to modify was filed where nothing in record showed cause of delay in case). Thus, we hold that the trial court did not err in failing to make Radler's reduced child support obligation retroactive.

We overrule Radler's fourth issue.

## Conclusion

We affirm the order of the trial court.


Julie Countiss
Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.